**In re MONICA SCOTT, INC., Debtor.**

**Bankruptcy No. 3–89–3116.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Jan. 23, 1991.

William Kampf, Minneapolis, Minn., for debtor.

James Rubenstein, Minneapolis, Minn., for Corporate Properties.

Wm. Fisher, Minneapolis, Minn., for St. Louis Development.

John McDonald, Minneapolis, Minn., for UCC.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court for hearing on the 21st day of November, 1990, on objection by the Debtor to the filed administrative expense claim of St. Louis Development Partners (Claimant), resulting from the post-assumption breach of an unexpired lease. Appearances are as noted on the record. The Court, having heard and received arguments of counsel, and now being fully advised in the matter, makes this ORDER pursuant to the Federal and Local Rules of Bankruptcy procedure.

## I.

The Claimant and the Debtor entered into a pre-petition lease of nonresidential real estate, which the Debtor assumed post-petition, pursuant to notice, hearing, and order of the Court. The lease was later breached by the Debtor and the premises were abandoned. All rent was paid current at the time of abandonment. The Claimant did not accept the abandonment, and has not retaken possession of the leased property. The Claimant has now filed an administrative expense claim for rent owing for the remainder of the lease term, *i.e.*, date of abandonment through July 14, 1991, equalling $18,378.08.

The Debtor objects to allowance of the claim as an administrative expense.[1] The Claimant argues that the well-settled case law evidences its entitlement to administrative expense priority for the unpaid post-abandonment rent.

## II.

11 U.S.C. §§ 365(g) and 502(g) clearly provide a statutory expression of Congressional intent that post-assumption rejection by a debtor of an unexpired lease results in administrative expense entitlement to the lessor of all damages flowing from the breach, including future rent.[2] The Code

---

1. The Debtor also objects on the grounds that the damages for breach, which make up the claim, are excessive under Missouri law, the state law jurisdiction where the property is located. The claimant argues that Missouri law allows a landlord to receive all future lease payments owing if it keeps the premises idle. Claimant is clearly correct on the issue, and the

Debtor's argument is wholly without merit. *See: Hurwitz v. Kohm*, 516 S.W.2d 33 (Mo.App. 1974); and *Gruber v. Adler*, 600 S.W.2d 669 (Mo.App.1980).

2. Rejection constitutes a breach. 11 U.S.C. § 365(g) identifies when, under various scenarios, rejection by a debtor of an unexpired lease

provisions are consistent with the prior Bankruptcy Act and with pre-Code case law.[3]

### III.

The reasoning in Code cases which attempt to explain the rationale of the statute, is inadequate.[4] Perhaps the failure of adequate explanation is only the natural result of attempts to ascribe reason to the unreasonable. The first, and leading, Code case dealing with the issue is *Samore v. Boswell (In re Multech Corp.)*, 47 B.R. 747 (Bankr.N.D.Iowa 1985).

The *Multech* court viewed the logic of granting administrative expense status to future rent liability flowing from rejection of assumed leases as quite simple. It stated:

> The filing of bankruptcy creates a new juridical entity that is separate and apart from the Debtor which existed prior to bankruptcy proceedings.... The assumption of an executory contract by a Debtor–in–Possession is an act of administration creating an obligation of the estate which is legally distinct from the obligations that existed prior to an assumption of the contract. *Multech*, 47 B.R. at 750.

There appear to be at least two deficiencies in this deceptively simple approach.

First, in considering the nature of the entity which assumes an executory contract, the Supreme Court said, in *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984):

Much effort has been expended by the parties on the question of whether the debtor is more properly characterized as an "alter ego" or a "successor employer" of the prebankruptcy debtor, as those terms have been used in our labor decisions.... We see no profit in an exhaustive effort to identify which, if either, of these terms represents the closest analogy to the debtor-in-possession. Obviously if the latter were a wholly "new entity", it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing. *NLRB*, 104 S.Ct. at 1197.

Thus, the "new juridical entity" premise observed in *Multech* is not necessarily a solid analytical building block in considering issues of assumption. The premise is especially suspect in considering issues resulting from the assumption of unexpired pre-petition leases.

The reason that the premise is especially suspect regarding these leases has to do with the second apparent deficiency in the *Multech* court explanation. The *Multech* court speaks of an unexpired pre-petition lease as though it is an executory contract. It is not. A lessor of an unexpired, but consummated, lease ordinarily has no sig-

---

is considered to have occurred for purposes of treating the resulting claim of the nonbreaching party. Section 365(g)(1) provides that, for unassumed leases, the rejection is considered to have occurred immediately prior to the filing of the petition. Section 502(g) provides that claims arising from rejection of unassumed leases are to be determined and allowed as unsecured claims, limited in amount by § 502(b)(6). Section 365(g)(2) provides that subsequent rejection of assumed leases is considered to have occurred either, at the time of the actual rejection or, in some converted cases, just prior to the conversion. No provision is made in § 502 for the allowance or treatment of claims resulting from the rejection of leases that had been assumed prior to rejection. The silence of § 502,

together with the scheme of § 365(g)(2), clearly indicate Congressional intent that the rejection of assumed leases be treated as either Chapter 11 or Chapter 7 administrative expenses.

3. For a discussion of pre-Code treatment under both the case law and Bankruptcy Act, *see:* 2 Collier on Bankruptcy ¶ 365.03 at 365–10 *et seq.*

4. *See: Samore v. Boswell (In Re Multech Corp.)*, 47 B.R. 747 (Bankr.N.D.Iowa 1985); *LJC Corp. v. Boyle*, 768 F.2d 1489 (D.C.Cir.1985); *In re Pearson*, 90 B.R. 638 (Bankr.D.N.J.1988); *In re Mushroom Transp. Co.*, 78 B.R. 754 (Bankr.E.D. Pa.1987).

nificant performance obligation remaining. The required substantial performance has been made by delivery of the leased property.[5] Accordingly, no significant unperformed obligation of the lessor is reinstated upon assumption.

Nor are the lessor's rights placed in jeopardy by the assumption. Contrary, through the assumption, the debtor-in-possession cures all defaults, announces the intention to fully perform in the future, and provides adequate assurance of future performance. At that point, the lessor is restored full contractual rights and receives all entitled performance. No non-bankruptcy cause for termination or other remedy exist. No new detriment is suffered by, or performance demanded of, the lessor in the transaction. In fact, all that the lessor will have lost is the right to enforce a bankruptcy or insolvency clause in the lease[6]; but that right became unenforceable by the filing of the case, not by the assumption of the lease.

Presumably, these considerations would be of great import to Congress in determining whether to grant priority to the claim for future rent when an assumed lease is later rejected.[7] But, under 11 U.S.C. § 365(g), apparently they were not. The *Multech* court provides the following rationale for § 365(g) as it relates to future rent claims resulting from the rejection of leases that have been assumed:

[N]ot limiting a landlord's administrative expense arising from rejection of an assumed contract is only fair since the assumption of an executory contract reflects a business judgment by a Debtor-in-possession that some benefit will inure to the estate and thus to unsecured creditors from assuming this particular pre-petition obligation. Should that judgment prove wrong, the unsecured creditors may be harmed by the amount of the landlord's claim, particularly in the case of a long-term lease; nonetheless, they rather than the lessor should bear the risk since the assumption was initially intended to benefit them. *Multech*, 47 B.R. at 751. (Reference to footnote omitted).

However, as pointed out earlier, the lessor bears no risk, by reason of the assumption, that it does not otherwise have under non-bankruptcy law, absent the filing. The right to enforce a bankruptcy or insolvency clause in the lease is made unenforceable by the filing of the case. Upon assumption, no other nonbankruptcy default exists.

An important premise of the Bankruptcy Code is that the value of pre-petition claims and interests which are greater in priority than unsecured creditor claims should be protected from erosion, due to the bankruptcy, during pendency of the case. Accordingly, the allowance of administrative

**5.** Those who argue that a lessor has a continuing performance obligation to not interfere with a lessee's right to peaceful possession, confuse the concept of remedies with the concept of performance. The latter involves required functional responsibilities, while the former involves the acknowledgement of rights and the forbearance of remedies. An example of a true unperformed obligation of a lessor regarding an unexpired lease, would be the requirement to maintain common areas in connection with a shopping center lease. However, the obligation is incidental to any particular lease, and is not so substantial that it makes the lease an executory contract. Professor Vern Countryman's definition of what constitutes an executory contract for bankruptcy purposes is:

A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would con-

stitute a material breach excusing performance of the other.
*See:* 2 Collier on Bankruptcy ¶ 365.01 at 365–14, n. 17, and ¶ 365.02 at 365–15, n.3.

**6.** Insolvency and bankruptcy clauses typically define default to include insolvency or the filing for bankruptcy protection. The clauses are not enforceable in bankruptcy. *See:* 11 U.S.C. § 365(e)(1).

**7.** The *Multech* court's explanation that the assumption is an act of administration creating an obligation of the estate which is legally distinct from the obligations that existed prior to the assumption strains logic. Liability of the estate to the lessor for failure of future performance regarding the lease already exists absent assumption, limited only by 11 U.S.C. § 502(b)(6). Prior to assumption, the lessor's claim is prioritized as a pre-petition unsecured claim.

expense status to the claims of lessors resulting from rejection of assumed leases should be based on detriment to the lessor caused by the assumption, not on the perceived benefit to the estate by assumption. Ordinarily, the detriment would be the failure to receive performance of obligations accruing after the assumption, but before the rejection.

The Bankruptcy Code does not premise that the filing of a bankruptcy case should result in a windfall to one creditor at the expense of others. Unfortunately, the effect of § 365(g) [1978], as augmented by § 365(d)(4) [1984], is to improve post-petition (by substantial measure) the pre-petition position of a creditor lessor of nonresidential real estate at the expense of other creditors. Under § 365(d)(4), these leases must be assumed or rejected within sixty days of the case filing. An assumption not only cures all defaults, if any exist, but it transforms all liability on the pre-petition claim from unsecured to administrative status at the expense of other unsecured creditors should the case fail.

Simply stated, the grant of administrative priority to the total pre-petition claim upon assumption, is the legislated price for the statutory negation of bankruptcy or insolvency clauses in leases. That appears to be an unreasonable price set by a policy that, in light of the overall purposes and objectives of the Bankruptcy Code, seems clearly misguided.

### IV.

Unless the Congress addresses this situation, cause will undoubtedly be found to exist, as a matter of course, for extending to confirmation the time to assume or reject significant leases in Chapter 11 cases.[8] However, based on the foregoing findings and conclusions stated in part II, it must be, and

IT IS HEREBY ORDERED:

The Debtor's objection to the filed claim of St. Louis Development Partners is over-ruled, and the claim is allowed in the amount of $18,378.08 as an administrative expense claim.

---

8. Although the claim in this dispute is relatively small, it is one of many assumed leases that the Debtor was required by the Court to act upon in a timely manner pursuant to 11 U.S.C. § 365(d)(4). While the statute allows for the extension of time to assume or reject nonresidential real estate leases based on cause, this Court has strictly applied the statute in most cases. Although limited extensions were granted in this case, requests by the Debtor to defer assumption to confirmation was denied. It appears that the consequence will be catastrophic for unsecured creditors in the case. They might be entirely excluded from distribution of a fund exceeding $600,000.