**In re KLEIN SLEEP PRODUCTS, INC., Debtor.**

**NOSTAS ASSOCIATES, Appellant,**

v.

**Bernard W. COSTICH, Chapter 11 Trustee, and the Official Committee of Unsecured Creditors.**

No. 93 Civ. 7599 (CSH).

United States District Court,
S.D. New York.

Oct. 17, 1994.

Michael S. Kopelman, Hackensack, NJ, for appellant Nostas Associates.

*MEMORANDUM OPINION
AND ORDER*

HAIGHT, District Judge.

This is an appeal of an Order of Bankruptcy Judge Francis G. Conrad[1] dated October 19, 1993, reducing, allowing and classifying Nostas Associates' ("Nostas") proofs of claim alleging unpaid rent and related expenses under an unexpired lease assumed and later rejected by the debtor Klein Sleep Products, Inc. ("Klein Sleep"). Having considered Nostas' arguments and the applicable provisions of the bankruptcy code, I affirm the Order of the bankruptcy court.

*BACKGROUND*

Klein Sleep is in the business of selling mattresses, foundations, bedding and related products. In November 1985, Klein Sleep, as lessee, and Nostas, as lessor, entered into a ten-year lease (the "Lease") of property located at 453 Route 17 in Paramus, New Jersey (the "Premises"). On June 7, 1991, Klein Sleep filed a petition for relief under Chapter 11 of the bankruptcy code. On August 10, 1991, Judge Conrad approved the debtor's assumption of the Lease by "so ordering" the parties' stipulation to that effect. By order dated January 4, 1993, Judge Conrad authorized the appointment of a Chapter 11 Trustee, Bernard W. Costich ("Costich"). The court also held that administrative claims arising after December 1, 1992 would receive priority over all other administrative claims.

By letter dated January 29, 1993, Costich notified Nostas that the debtor was surrendering the Lease and possession of the Premises. Nostas thereafter filed a motion to compel payment of administrative rent, allegedly unpaid since November, 1992. In response to this motion, by order dated April 12, 1993, Judge Conrad held that the Trustee's January 29, 1993 letter constituted a post-petition breach of the lease and that Nostas' claim for damages arising from this breach would receive administrative priority status for the period before January 29, 1993. Any claims for rent due after January 29, 1993 would receive general unsecured status. The order also directed Nostas to file any proofs of administrative or general unsecured claims on or before May 14, 1993.

On May 5, 1993 Nostas filed two proofs of administrative claim. One sought rent and other amounts due under the lease for the period before and including January 29, 1993, in the amount of $27,048.31 plus reasonable attorney's fees. The second alleged damages resulting from the breach for the period after January 29, 1993, in the amount of $260,528.68 plus reasonable attorney's fees. The Trustee and the Official Committee of Unsecured Creditors objected to these claims. At

---

1. Sitting by special designation in the United States Bankruptcy Court of the Southern District of New York.

a hearing held on July 20, 1993, Nostas filed an administrative claim for brokerage fees in the amount of $7,856.10 incurred in connection with reletting the Premises to another retailer effective July 1, 1993.

Following that hearing and another held on September 22, 1993, the bankruptcy court entered an order dated October 19, 1993 allowing Nostas' administrative claim as a super-priority administrative expense in the amount of $17,946.05, representing unpaid rent accruing after December 1, 1992 and before January 29, 1993; allowing $6,792.98 as an administrative priority claim representing unpaid rent accruing prior to December 1, 1992; and, applying § 502(b)(6) of the bankruptcy code, allowing $79,943.88 as an unsecured administrative claim representing the amount of rent due under the lease for one year following the filing of the petition. The court disallowed all attorney's fees, the alleged brokerage fee, and $2,309.28 of Nostas' administrative claim for the period prior to January 29, 1993. Nostas' appeal followed this ruling.

### DISCUSSION

■ The narrow issue this Court is asked to decide is whether the bankruptcy court erred in refusing to grant administrative priority to post-surrender damages flowing from the rejection of a previously assumed unexpired pre-petition lease. Nostas argues that under section 365(g)(2)(A) [2] of the bankruptcy code all future rents due under an assumed lease are automatically accorded administrative status. As administrative expenses, Nostas further submits, they are not subject to the limitations of section 502(b)(6) [3] of the code.

■ I am unpersuaded. Section 365 merely establishes the method for determining the date upon which a breach of an assumed pre-petition lease is deemed to occur. It does not purport to assign the priority awarded to damages flowing from the rejection of a previously assumed lease. The fact that such damages are considered to arise post-petition pursuant to § 365(g)(2)(A) does not automatically afford those expenses administrative status. Not every post-petition expense necessarily qualifies as an administrative expense. *See Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98, 101 (2d Cir.1986) ("A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate.") (citations omitted); *cf. N.L.R.B. v. Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984) (expenses and liabilities incurred from an assumed executory contract *"may* be treated as administrative expenses") (emphasis added).

■ The appropriate inquiry instead centers upon application of § 503(b)(1)(A) of the bankruptcy code. Section 507(a) of the bankruptcy code grants first priority in payment to administrative expenses allowed under section 503(b). Section 503(b)(1)(A) affords the coveted status of administrative expenses to "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." It is settled law in this circuit that expenses fall within § 503(b)(1)(A) if they arise out of a transaction between the debtor and the creditor, and " 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.' " *McFarlin's*, 789 F.2d at 101 (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir.1976)).

---

**2.** That section provides:

"(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

    (2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

        (A) if before such rejection the case has not been converted under section 1112, 1307, or 1208 of this title, at the time of such rejection."

**3.** Section 502(b)(6) "limits a landlord's unsecured claim for damages arising from the termination of a lease 'to the rent unpaid on the date of bankruptcy plus the greater of one year's rent under the lease or 15% of the rent remaining under the lease.' " *In re Johnston, Inc.*, 164 B.R. 551, 555 n. 6 (Bankr.E.D.Tex.1994) (quoting 2 *Norton Bankr.Law and Prac.* § 28.15 (1991)).

In order to receive administrative status, expenses must therefore "clearly benefit the estate." *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 482, 488–89 (Bankr. S.D.N.Y.1991); *see also In re ICS Cybernetics, Inc.,* 111 B.R. 32, 36 (Bankr.N.D.N.Y. 1989) (to qualify as administrative, claim must confer a "concrete benefit" upon estate, not just the "mere potential of benefit"). Hence, the resolution of the issue presented in this appeal turns upon whether Klein Sleep derived a benefit from the expenses Nostas incurred following surrender of the Lease.

■ Judge Conrad found that the rental payments accruing subsequent to the January 29, 1993 surrender of the Lease afforded no benefit to the estate. This conclusion is self-evident. Once Klein Sleep vacated the Premises and rejected the Lease, the rental expenses absorbed by Nostas were simply of no value to the estate. The Premises were useless as far as Klein Sleep was concerned because it no longer occupied them. To the extent Nostas challenges this finding by the bankruptcy court, I therefore conclude that it was not clearly erroneous.[4]

■ Nostas does not dispute that the estate must receive a benefit from expenses incurred in order for those expenses to qualify as administrative. Nostas instead reasons that the bankruptcy court's approval of the Lease assumption necessarily rendered the Lease and all future expenses incurred thereunder beneficial to the estate. The fault in this reasoning lies in Nostas' belief that the benefit to measure is that which resulted to the estate from assuming the lease. I have no doubt that at the time the Trustee chose to assume the Lease and the bankruptcy court approved that decision, both the Trustee and the bankruptcy court believed the debtor's continued occupation of the Premises and assumption of the Lease to be of measurable benefit to the estate. But nothing in those actions suggests a conclusion that the estate would benefit after the Premises were surrendered. The appropri-

ate test is not whether the *assumption* benefitted the estate, it is whether any benefit was conferred upon the estate from the expenses sought to be granted administrative status. In the present case, those expenses consist of the unpaid rent and related expenses for the period after surrender of the lease. As for these expenses, this Court agrees with the bankruptcy court's determination that they bestowed no benefit upon the estate. It follows that these expenses do not satisfy the criteria for administrative status under § 503(b)(1)(A).

Because the bankruptcy court correctly concluded that Nostas' claim for post-surrender damage was a general unsecured claim, it also correctly held that claim subject to the limitations provided by section 502(b)(6) of the code limiting post-surrender claims to one year's rent under the Lease. The Trustee argues that section 502(b)(6) applies equally to administrative expenses and general unsecured claims. Although the contrary position has strong support, *see In re Johnston,* 164 B.R. at 555 (the limitations of § 502 do not apply to administrative expenses), that is not an issue which must concern this Court because Nostas' post-surrender damages give rise to a general unsecured claim as to which section 502(b)(6) clearly applies.

My conclusion is reinforced by the decision in *In re Johnston, supra,* 164 B.R. 551, in which, facing circumstances factually identical those in the case at bar, the court held that post-rejection expenses under an assumed pre-petition lease were not entitled to administrative priority under § 503(b)(1)(A). That court's reasoning instructs the present analysis:

> "To hold that a court's prior approval to the assumption of a lease negates the limitations under § 503 renders that section superfluous as to leases.... In this era when courts are to apply the 'plain meaning' of the Bankruptcy Code, this Court cannot find that future rents rise to the level of costs and expenses that were actu-

---

4. Nostas implicitly, and perhaps unwittingly, supports this conclusion by noting that Klein Sleep continued to sell bedding products and achieve a benefit for 1½ years following assump-

tion of the lease, and acknowledging that Klein Sleep rejected the lease when it "no longer had any possible use for [it]." *See* Nostas Reply Brief at pp. 8, 16.

al and necessary to preserve the estate [under section 503(b)(1)(A)]. . . . The rents which were due after the lease was rejected were not incurred because of a benefit bestowed to the estate. The benefit the estate received from the lease ended when the Debtor unconditionally vacated the leased space."

*Id.* at 554–55.

Nostas places heavy, and misplaced, reliance upon the decision in *In re Multech Corp.*, 47 B.R. 747 (Bankr.N.D.Iowa 1985). Addressing the very issue presented in this case, the Multech court held that "the liabilities flowing from the rejection of [an assumed lease] will ever after be regarded as [an] administrative expense." *Id.* at 750. The court reasoned that, "the liabilities and expense arising from rejection of an assumed contract, are no longer vulnerable to the limitations on administrative expenses imposed by section 503." *Id.* at 752.

To the extent *Multech* stands for the proposition that damages flowing from rejection of an assumed pre-petition lease automatically become administrative expenses, I respectfully disagree. That holding squarely contradicts the requirement in this circuit that post-petition expenses must benefit the estate to be afforded administrative status under § 503(b)(1)(A). I also decline to follow the *Multech* court's broad-reaching assumption that the bankruptcy court's mere approval of the assumption of a lease *ipso facto* renders all future rent payments due under that lease beneficial to the estate, even after the debtor has vacated the premises and surrendered the lease.

*In re New York Trap Rock Corp.*, 137 B.R. 568 (Bankr.S.D.N.Y.1992), another case relied upon by Nostas, is inapposite. In *Trap Rock*, the debtor-in-possession assumed a pre-petition contract between the construction manager on one of its plants and a subcontractor. The bankruptcy court held that by virtue of the debtor's assumption of the contract, the debtor became a party to the contract, thereby satisfying the first prong of the § 503 test as set forth by *McFarlin's*. Applying the second prong of the *McFarlin's* test, the court further held that post-petition expenses incurred by the subcontractor pursuant to the assumed contract were administrative expenses under § 503(b)(1)(A) because the estate was clearly reaping the benefits of the subcontractor's continued performance under the contract: the necessary modernization of its plant. *Id.* at 574. The obvious and substantial benefit to the debtor in *Trap Rock* in the form of necessary construction work, however, finds no counterpart in the context of Klein Sleep's surrendered lease.

Accordingly, this Court holds that benefit to the estate as required by section 503(b)(1)(A) must be shown for damages arising from the subsequent rejection of an assumed lease to be afforded administrative priority, even if the expenses are considered post-petition expenses under section 365(g)(2)(A). Because the post-surrender damages incurred by Nostas in the instant case conferred no benefit upon Klein Sleep, those expenses are not entitled to administrative priority status. Moreover, Nostas fails to set forth any basis for challenging the bankruptcy court's denial of attorney's fees incurred subsequent to Klein Sleep's surrender of the lease. Because this Court finds no error in that decision, it will not be disturbed. The order of the bankruptcy court dated October 14, 1993 is accordingly affirmed.[5]

## CONCLUSION

The October 19, 1994 Order of the bankruptcy court is affirmed.

It is SO ORDERED.

---

**5.** Although it is evident that Nostas is not pleased with the bankruptcy court's disallowance and expungement of $2309.28 of its administrative claim and denial of its claim for brokerage fees, it fails to brief those issues on appeal or articulate any basis for reversal of those aspects of the bankruptcy court's rulings. Accordingly, this Court will not disturb those parts of the ruling of the bankruptcy court.