CALABRESI, Circuit Judge:
 

 The liquidation provisions of the Bankruptcy Code contained in 11 U.S.C. § 726 distribute a pro-rata share of a debtor’s estate to each unsecured creditor so that similarly situated creditors may be treated alike. This pro-rata rule does not, however, always lead to an equitable distribution of the estate. When one claimant is a landlord holding a long-term lease, its single unsecured claim for twenty or thirty years of future rent could devour so much of the debtor’s estate that only crumbs could be left for the other unsecured creditors. Recognizing the potentially distorting effect of claims arising out of long-term leases, Congress capped unsecured claims for future rent at one year. 11 U.S.C. § 502(b)(6). This allows landlords to recover some of their losses from a bankrupt tenant, but sees to it that their recovery will not crowd out the claims of competing creditors.
 

 Bankruptcy law also aims to avoid liquidation altogether when that is possible. Although the Code offers no magical potion to restore a debtor’s financial health, it does provide some useful medicine designed to help a debtor get back on its feet and heading towards convalescence. It does this by allowing a debtor to attempt to reorganize rather than fold and by creating incentives for creditors to continue to do business with the debtor while reorganization proceeds. The Code does this, at least in part, by assuring these post-bankruptcy creditors that, if the debtor fails to rehabilitate itself and winds up in liquidation, they can move to the front of the distributive line, ahead of the debtor’s pre-bankruptcy creditors. Special priority is therefore accorded to expenses incurred under new contracts with the debt- or, as “administrative expenses” of the estate. The same priority is given to expenses arising under pre-existing contracts that the debtor “assumes” — contracts whose benefits and burdens the debtor decides, with the bankruptcy court’s approval, are worth retaining.
 

 These two competing bankruptcy policies — promoting parity among creditors and yet granting priority to the claims of creditors who continue to do business with an insolvent debtor — collide in the case before us. After entering bankruptcy, Klein Sleep (the debtor) assumed, with court approval, the unexpired lease it had with Nostas Associates (its landlord). Some eighteen months later, when it became apparent that the reorganization had failed, the newly appointed bankruptcy trustee decided to “reject” the lease. The landlord then sought to recover the future rent that was due under the lease. The bankruptcy court held, and the district court agreed, that Nostas was entitled to
 
 *21
 
 recover as an administrative expense only the rent that had come due before the trustee rejected the lease. Beyond that, Nostas could recover as a general unsecured claim only one year’s worth of the rent coming due after rejection.
 

 Two questions arise on appeal. We must first decide whether the future rent gives rise to a general unsecured claim that receives no priority or whether it is, instead, an administrative expense entitled to priority. If it is an administrative expense, we must then determine whether the claim is nonetheless capped at a year’s worth of rent by § 502(b)(6).
 

 Our task would be far easier if Congress had answered these questions explicitly in the Code, but unfortunately it left its intentions ambiguous. In order to resolve this ambiguity, we turn first to the various provisions of the Code that discuss the timing and priority of claims. Since we do not find an unmistakable Code directive, however, we also seek guidance from the practice prevailing under the Code’s predecessor, the Bankruptcy Act. Adhering to that practice, we hold that damages arising from future rent under an assumed lease must be treated as an administrative expense, and we therefore reverse in part.
 

 The conclusion we reach seems on its face to be unduly favorable to landlords. But it may in fact do no more than recognize the existence of a default rule, which the bankruptcy court can use in encouraging landlords and tenants alike to renegotiate leases in bankruptcy so as to treat all the parties, including general unsecured creditors, equitably.
 

 I. Facts
 

 Nostas Associates, the landlord, appeals from a judgment of the United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge), dated October 17, 1994, affirming the bankruptcy court’s order — which assigned administrative priority to Nostas’s claims for past rent accruing under a commercial lease, allowed another year’s worth of future rent as a general unsecured claim, and disallowed any recovery for the rest. Before entering bankruptcy, Klein Sleep, Inc. had leased a store from Nostas in Paramus, New Jersey. Shortly after filing for Chapter 11 relief in June 1991, Klein Sleep (acting as debtor-in-possession) assumed the lease with the approval of the bankruptcy court pursuant to 11 U.S.C. § 365, and accordingly cured all rental arrears to that point. Klein Sleep continued to pay rent through October 1992. By January 1993, however, it had become clear that the reorganization had failed so completely that liquidating the firm’s assets would not cover even the administrative expenses of the estate. On January 29, 1993, Klein Sleep’s newly appointed Chapter 11 trustee, who was assigned the task of liquidating the estate, rejected the lease and surrendered possession of the store to Nostas.
 
 [1]
 

 Nostas argued to the bankruptcy court, to the district court, and now to us on appeal that Klein Sleep’s court-approved lease assumption converted
 
 all
 
 liability under the lease into administrative expenses that warrant a first priority in repayment under 11 U.S.C. § 507(a)(1) (providing that administrative expenses, as defined by 11 U.S.C. § 503(b), are first in the order of repayment of claims and expenses). Under this theory, Nostas seeks administrative expense status for rent arrearages from November 1992 through January 1993, for future rent accruing after January 1993, and for attorneys’ and brokers’ fees incurred in connection with reletting the space.
 

 The bankruptcy court (Francis G. Conrad,
 
 Bankruptcy Judge, sitting by designation from the Bankruptcy Court for the District of
 
 Vermont) allowed Nostas’s claims in the following order of priority: (1) Super-priority administrative expense status for rent during the liquidation period, from December 1, 1992, through January 29, 1993 (approxi
 
 *22
 
 mately $18,000, of which 100% will be paid upon distribution of the estate), as “burial expenses” of winding up the estate; (2) priority administrative expense status for rent during the pre-liquidation period, from November 1, 1992, through December 1, 1992 (approximately $6800, of which approximately 85% will be paid upon distribution of the estate); and (3) general unsecured claim status for future damages arising after the trustee rejected the lease (approximately $80,000
 
 [2]
 
 or one year’s future rent as limited by 11 U.S.C. § 502(b)(6), of which nothing will be paid upon distribution of the estate). The bankruptcy court disallowed the attorneys’ and brokers’ fees that the landlord incurred to relet the premises on the grounds that the lease did not provide compensation for such expenses.
 

 Judge Haight affirmed the bankruptcy court’s order.
 
 In re Klein Sleep Prods., Inc.,
 
 173 B.R. 296 (S.D.N.Y.1994). Relying primarily on this court’s decision in
 
 Trustees of Amalgamated Insurance Fund v. McFarlin’s, Inc.,
 
 789 F.2d 98, 101 (2d Cir.1986)—a case that we shall discuss shortly — the district court held that
 

 benefit to the estate as required by section 503(b)(1)(A)
 
 [3]
 
 must be shown for damages arising from the subsequent rejection of an assumed lease to be afforded administrative priority, even if the expenses are considered post-petition expenses under section 365(g)(2)(A).
 
 [4]
 
 Because the post-surrender damages incurred by Nostas in the instant case conferred no benefit upon Klein Sleep, those expenses are not entitled to administrative priority status.
 

 173 B.R. at 300. The district court also noted that Nostas waived its right to appeal from the bankruptcy court’s denial of its $2300 claim for brokerage fees, since Nostas had failed to address that issue in its district court brief.
 
 Id.
 
 at 300 n. 5. The district court stayed its order pending appeal, however, and directed the trustee to place $175,-000 in escrow.
 
 In re Klein Sleep Prods., Inc.,
 
 No. 93 CIV. 7599 (CSH), 1994 WL 652459 (S.D.N.Y. Nov. 18, 1994).
 

 II. Discussion
 

 A.
 
 Administrative Expense Status
 

 According to 11 U.S.C. § 503(b)(1)(A), “the actual, necessary costs and expenses of preserving the estate” constitute administrative expenses entitled to priority status upon distribution of the estate. The crux of Nostas’s argument is that a trustee’s or debtor-in-possession’s assumption of an unexpired lease transforms
 
 all
 
 liability under the lease, including damages that stem from a subsequent rejection of the lease, into administrative expenses. There is strong bankruptcy court precedent directly on point that supports this proposition.
 
 See, e.g., In re Monica Scott, Inc.,
 
 123 B.R. 990, 991 (Bankr.D.Minn.1991);
 
 In re Norwegian Health Spa, Inc.,
 
 79 B.R. 507, 509-10 (Bankr.N.D.Ga.1987);
 
 In re Multech Corp.,
 
 47 B.R. 747, 750 (Bankr.N.D.Iowa 1985);
 
 see also In re Frontier Properties, Inc.,
 
 979 F.2d 1358, 1367 (9th Cir.1992) (in a ease dealing with a breach of an assumed executory realty contract, citing
 
 Multech
 
 and
 
 Norwegian Health
 
 
 *23
 

 Spa
 
 and summarily stating: “When a trastee assumes and then rejects an executory contract ... all of the liabilities flowing from that rejection are entitled to priority as administrative expenses of the estate.”);
 
 In re Airlift Int'l, Inc.,
 
 761 F.2d 1503, 1509 n. 5 (11th Cir.1985) (stating in dicta that “the breach of an executory contract or unexpired lease assumed under section 365 clearly results in an administrative expense claim,” regardless of whether it is “an actual necessary cost or expense of preserving the estate”); 2 COLLIER ON BANKRUPTCY ¶ 365.08(01], at 365-65 (15th ed. 1995) (“[A] trustee must proceed cautiously in electing whether to assume or reject since an assumption will have the effect of making the expenses and liabilities incurred expenses of administration”).
 

 Multech,
 
 the seminal case on this issue, offers the following rationale for this rule:
 

 By defining the time at which a rejection of an assumed contract or lease constitutes a breach, section 365(g) clearly indicates that the act of assumption creates an administrative expense obligation of the particular proceedings in which the contract or lease was assumed. Consequently, if a lease is assumed in Chapter 11 proceedings, the liabilities flowing from the rejection of that lease will ever after be regarded as a Chapter 11 administrative expense.
 

 47 B.R. at 750 (footnote omitted).
 

 Citing our decision in
 
 McFarlin’s,
 
 however, the district court declined to follow
 
 Mul-tech
 
 and its progeny. The court stated that our decision in
 
 McFarlin’s
 
 established that
 

 expenses fall within § 503(b)(1)(A) if they arise out of a transaction between the debtor and the creditor, and “ ‘only to the extent that the consideration supporting the claimant’s right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.’ ”
 
 McFarlin’s,
 
 789 F.2d at 101 (quoting
 
 In re Mammoth Mart, Inc.,
 
 536 F.2d 950, 953 (1st Cir.1976)).
 

 173 B.R. at 298. It then asserted that Klein Sleep derived actual benefit not from its
 
 assumption
 
 of the lease, but only from its
 
 occupation
 
 of the leased premises.
 
 Id.
 
 at 299-300.
 

 Once the trustee gave the store back to Nostas, the court reasoned, Klein Sleep received no further benefit from the lease. As a result, the damages it sought for future rent did not meet the prerequisites for administrative expense status under § 503(b)(1)(A).
 
 Accord In re Johnston, Inc.,
 
 164 B.R. 551, 555 (Bankr.E.D.Tex.1994) (denying administrative priority to a claim for future rent under an assumed lease, on the grounds that the estate derived no benefit from the lease once the debtor unconditionally vacated the space);
 
 see also In re La Electronica, Inc.,
 
 995 F.2d 320, 323 (1st Cir.1993) (holding that the debtor corporation’s assumption of a prepetition contract to make alimony payments to its president’s ex-wife in exchange for her resignation did not create an administrative expense, since the ex-wife had already resigned before the petition was filed, and the contract therefore conferred no postpetition economic benefit to the estate);
 
 In re Stewart Foods, Inc.,
 
 64 F.3d 141, 145 n. 2 (4th Cir.1995) (relying solely on
 
 McFarlin’s
 
 and the district court’s decision in this ease, for its statement in dicta that “any claim arising out of an assumed contract constitutes an administrative expense only if, and to the extent that, the contract conferred an actual benefit to the estate”).
 

 At first glance, the bankruptcy court’s approach has much to recommend it. By denying administrative expense status for all future rent under an assumed lease, the court followed our stated policy that priorities in bankruptcy should be narrowly construed and sparingly granted.
 
 McFarlin’s,
 
 789 F.2d at 100. And, the bankruptcy court’s relegation of Nostas to the ranks of the unsecured creditors furthered this fundamental policy — based on the notion that individual creditors, whenever possible, should be prevented from seizing a disproportionate share of the estate — in a second way as well. Once future rent is treated merely as an unsecured claim, it is clearly capped by § 502(b)(6) at one year’s worth of unpaid rent. As a result, the rent claims cannot absorb all the assets of the estate, no matter how long the lease.
 

 
 *24
 
 Yet this approach has several deficiencies. First, it relies on an unduly narrow view of the benefit conferred on an estate when a trustee assumes an unexpired lease. Second, it does not adequately account for the Code’s timing provisions, which explicitly provide that claims arise “postpetition,” and therefore during the administration of the estate, if they are based on breaches of assumed leases. And finally, even if these two considerations did not resolve the matter, the district court’s approach does not accord with prior practice under the Bankruptcy Act (practice which, in cases of ambiguity, stands as a decisive guidepost for interpreting today’s Bankruptcy Code). Bankruptcy Act practice strongly directs us to treat the entire liability resulting from breach of an assumed lease as a cost of administering the estate.
 

 1.
 
 Benefit
 

 In discussing whether Klein Sleep benefited from assuming its lease, we must first address the trustee’s threshold contention that the Supreme Court has already decided this issue. The Court, in
 
 NLRB v. Bildisco & Bildisco,
 
 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), stated:
 

 Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract
 
 cum onere,
 
 and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor’s estate, 11 U.S.C. § 503(b)(1)(A) (1982 ed.).
 

 Id.
 
 at 531-32, 104 S.Ct. at 1198-99 (citation omitted). According to the trustee, “[t]he Supreme Court’s use of the word
 
 ‘may
 
 ’ and the citation to 11 U.S.C. § 503(b)(1)(A) remove any doubt that a claim for damages under an assumed lease must satisfy the statutory requirements of Section 503(b)(1)(A) before being entitled to an administrative expense priority.” Appellee’s Br. at 11. The trustee then adds that damages for future rent arising from an assumed lease cannot satisfy the requirements of § 503(b)(1)(A), as interpreted by
 
 McFarlin’s.
 

 We disagree with the trustee’s conclusion, since we do not attach such significance to the Supreme Court’s use of the word “may” in the quoted passage from
 
 Bildisco.
 
 The passage is part of a longer discussion in which the Court explained that once a debtor files for bankruptcy, the NLRB may not enforce the terms of a collective bargaining agreement by filing unfair labor practice charges against the debtor-in-possession.
 
 Id.
 
 at 530, 104 S.Ct. at 1198. The only recourse against the employer at that point is to file a claim in bankruptcy.
 
 Id.
 
 The Court emphasized that even if the debtor-in-possession rejected the agreement after having assumed it, the workers were still limited to bankruptcy remedies.
 
 Id.
 
 at 530-31, 104 S.Ct. at 1198. As an aside, and in dicta, the Court then pointed out in the cited passage that such a hypothetical bankruptcy remedy would probably be a claim for damages entitled to administrative expense status.
 
 Id.
 
 at 531-32, 104 S.Ct. at 1198-99.
 

 The Supreme Court’s statement on this point was entirely unrelated to its holding. And we decline to read it, ambiguous as it is, as taking any position on the highly complex controversy before us.
 

 We next address the trustee’s contention that our decision in
 
 McFarlin’s
 
 governs the outcome in this case. In
 
 McFarlin’s,
 
 the debtor-in-possession closed down one of its departments and accordingly ended its participation in a multiemployer pension plan covering its laid-off employees. 789 F.2d at 100. According to 29 U.S.C. § 1381, the company was required to make an additional lump sum payment to fund its employees’ share of the vested pension benefits in the plan. The question in
 
 McFarlin’s
 
 was whether this additional payment, known as a “withdrawal liability,” should be treated as an administrative expense of the estate because it arose after the filing of the petition (that is, when the department closed), or as a general unsecured claim because the underlying obligation to fund the pension plan arose from the employees’ prepetition work. 789 F.2d at 100.
 

 In
 
 McFarlin’s,
 
 we held that the withdrawal liability would be considered an administrative expense “only if it arises out of a transaction between the creditor and the bankrupt’s trustee or debtor in possession
 
 *25
 
 and ‘only to the extent that the consideration supporting the claimant’s right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.’”
 
 Id.
 
 at 101 (quoting
 
 Mammoth Mart,
 
 536 F.2d at 954) (citations omitted). The debtor was required to make the lump-sum contribution to the plan to guarantee pension benefits already earned by its employees. And so we concluded that the consideration for McFarlin’s withdrawal liability was the past labor of its employees — labor that had been supplied before the bankruptcy petition was filed — rather than any post-bankruptcy services.
 
 Id.
 
 at 102-03. This
 
 past
 
 labor had not been furnished for the benefit of the debtor-in-possession or for the continuation of its business after it filed for bankruptcy. As a result, it did not constitute an administrative expense.
 
 Id.
 
 at 103-04.
 

 McFarlin’s
 
 did not involve an assumed contract. We therefore had no occasion in that ease to decide whether an estate receives a post-bankruptcy benefit upon assumption of a contract. That open question is the issue before us, and we conclude that
 
 assumed contracts
 
 do in fact constitute a post-bankruptcy benefit to the estate. Indeed we believe that the bankruptcy court would not have permitted the estate to assume a lease unless such an assumption constituted a valid benefit.
 

 One sensible way to look at whether the estate was benefitted by assuming the lease is to ask whether the debtor’s entry into the lease would have been a voidable preference had it occurred just prior to the bankruptcy filing. According to § 547(c)(1) of the Code, where the debtor transfers assets to a creditor and, through a substantially contemporaneous exchange, receives new value, there is no voidable preference. If the debtor had entered into the lease within 90 days before the filing of the petition, and if the rent for the entire term of the lease had been due and payable immediately, the estate would undoubtedly have received “new value.” That value is the right to occupy the premises for the full term of the lease — an assignable right that has value, regardless of whether it is ever exercised or sold. By assuming the lease, the debtor retains an identical transferable right and therefore receives an “actual benefit” as required by our decision in
 
 McFarlin’s.
 

 The trustee argues that any inquiry as to “benefit” is foreclosed by the district court’s factual finding that Klein Sleep did not benefit from its assumption of the lease. The opposite, however, is true: the bankruptcy court’s earlier decision to let Klein Sleep assume the unexpired lease — a decision that was not appealed — precluded a subsequent finding that assuming the lease did not benefit Klein Sleep. That decision required a judicial finding — up-front—that it was in the best interests of the estate (and the unsecured creditors) for the debtor to assume the lease, pursuant to 11 U.S.C. § 365(a). It is the same kind of finding that the bankruptcy court is required to make with regard to all
 
 new
 
 contracts entered into by the trustee without prior court approval during the administration of the estate in order for those contracts to qualify for priority pursuant to § 503(b).
 
 Compare In re Orion Pictures Corp.,
 
 4 F.3d 1095, 1099 (2d Cir.1993) (“[A] bankruptcy court reviewing a trustee’s or debtor-in-possession’s decision to assume or reject an executory contract [pursuant to § 365] should examine a contract and the surrounding circumstances and apply its best ‘business judgment’ to determine if it would be beneficial or burdensome to the estate to assume it.”),
 
 cert. dismissed,
 
 — U.S. —, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994)
 
 with Mammoth Mart,
 
 536 F.2d at 954 (granting administrative expense status to postpetition claim only if consideration “was both supplied to and beneficial to the debtor-in-possession in the operation of the business”).
 

 As one bankruptcy court has explained:
 

 By requiring the court to determine the reasonable necessity of the newly entered contract under § 503(b), Congress has insured some judicial control over the determination of what executory contracts will be granted administrative expense priority. The Code, in order to streamline reorganization procedure, allows a debtor in possession to enter into contracts in the ordinary course of business without seeking court approval. Thus, contracts initially entered into during reorganization, unlike
 
 *26
 
 contracts assumed during reorganization, will not have undergone court scrutiny. By limiting automatic administrative expense treatment under § 365(g) to assumed contracts, and by requiring initially entered contracts to qualify under § 503(b) in order to be granted an administrative expense priority, Congress has insured both similar treatment and similar procedural safeguards for these fundamentally similar obligations.
 

 In re Chugiak Boat Works, Inc.,
 
 18 B.R. 292, 297-98 (Bankr.D.Alaska 1982) (footnotes omitted);
 
 see also Airlift Int’l,
 
 761 F.2d at 1509 n. 5;
 
 Norwegian Health Spa, Inc.,
 
 79 B.R. at 509-10;
 
 Multech,
 
 47 B.R. at 751.
 

 In short, we decline to find that Klein Sleep did not benefit by assuming its lease simply because the lease was no longer profitable at the time it stopped displaying mattresses on the premises. Such a holding would mean that any post-bankruptcy contract, entered into for the benefit of a bankrupt’s estate, would cease to be entitled to priority the moment the deal turned sour. When the debtor-in-possession assumed the lease, it retained the right to occupy the leased premises immediately and in the future. Its ability to assign this immediate right of possession, as well as its ability to assign the future right of possession under the lease, had a present value at the time of assumption. Acquisition of those rights clearly constituted a benefit to the estate even if, later, the benefit turned to dust.
 

 2.
 
 Timing
 

 The Code’s timing provisions also tilt in favor of Nostas’s position that all future rent is an administrative expense. In allowing and assigning priority to claims arising from unexpired leases, the Code distinguishes between leases that have been assumed, and those that have not. Section 502(g) of the Code clearly instructs us that claims arising from
 
 unassumed
 
 leases are to be allowed as general unsecured claims. Section 502(g) has no analogue that tells us what to do with claims arising from
 
 assumed
 
 leases. But because § 502(g) limits its reach to unassumed leases, it is reasonable to infer that assumed leases are to be treated differently. Since it would be absurd to suppose that such leases would not qualify as claims at all, it follows that they must be considered administrative expenses of the estate.
 
 See Monica Scott,
 
 123 B.R. at 990-91 n. 2.
 

 This inference is further supported by § 365(g), which fixes the time at which a debtor’s rejection of an unexpired lease is deemed to constitute a breach of the lease. When a debtor rejects an unassumed lease, breach is deemed to occur at the time the bankruptcy petition was filed. 11 U.S.C. § 365(g)(1). If the lease has been assumed, however, breach is deemed to occur whenever the lease is later rejected. § 365(g)(2)(A).
 
 [5]
 
 According to the Code’s legislative history, the purpose of § 365(g) is to treat claims arising from unassumed leases “as prepetition claims.” H.R.Rep. No. 595, 95th Cong., 2d Sess. 349 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 6305, 5849. But the only way in which prepetition claims are treated differently from postpetition claims is that the former are classified as general claims, whereas the latter — arising, for example, from torts committed by the estate in bankruptcy, or from contracts entered into by the trustee or debtor-in-possession — are entitled to administrative expense priority. It would seem to follow that rejection of an assumed lease — that is, breach of contract committed by the trustee or debtor-in-possession while administering the estate — gives rise to a debt entitled to the same administrative expense priority.
 

 The timing provisions of the Code were not, however, directly designed to answer the question we are asking today, and so we are hesitant to read too much into them. Indeed, because all of our previous discussion has' essentially required us to read between the lines of Congress’s directives, we conclude that the Bankruptcy Code, though it clearly leans in favor of administrative status for assumed leases, is still ambiguous. When
 
 *27
 
 that is the case, we are required to turn for further guidance to the prior practice under the Bankruptcy Act.
 

 3.
 
 Practice Under the Bankruptcy Act
 

 Were we writing on a clean slate, we might perhaps be persuaded by the district court’s analysis — though, as we have discussed above, we think that the structure of the Code favors the landlord’s position. We are not, however, permitted to start from scratch. In
 
 Dewsnup v. Timm,
 
 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court declined to resolve
 
 de novo
 
 an ambiguous interrelationship between certain Bankruptcy Code provisions, where accepted pre-Code bankruptcy practice existed. The Court stated:
 

 When Congress amends the bankruptcy laws, it does riot write “on a clean slate.” ... Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a change in pre-Code practice that is not the subject of at least some discussion in the legislative history.
 

 502 U.S. at 419, 112 S.Ct. at 779 (citation omitted).
 

 In the case before us, an ambiguity arguably exists as to whether claims arising from the rejection of assumed contracts by definition meet the “actual and necessary” requirements of § 503(b)(1)(A) and hence automatically enjoy administrative expense priority under § 507(a)(1).
 
 See In re Jartran, Inc.,
 
 886 F.2d 859, 868-69 n. 11 (7th Cir.1989) (stating that “the current provisions of the Code are not entirely clear” as to whether creditors are entitled to administrative expense priority for executory contracts or leases that are assumed before conversion from reorganization to liquidation proceedings). Nostas and
 
 amicus
 
 argue, however, that the pre-Code practice was to grant administrative status automatically to all claims arising from the subsequent rejection of an assumed executory contract — and, therefore, that any ambiguity must be resolved in favor of granting administrative expense status.
 

 Nostas points out in its reply brief that the relevant sections of the former Bankruptcy Act provided that “[w]hen a contract entered into or assumed in a superseded proceeding is rejected,
 
 the resulting liability
 
 should constitute a cost of administration of the superseded proceeding.” Bankruptcy Act §§ 238(b), 378(b), 483(b) (emphasis added);
 
 see also Chugiak Boat Works,
 
 18 B.R. at 295 n. 5. In this context, the “resulting liability” would be the landlord’s damages for future rent and, arguably, for related costs such as legal and brokerage fees. This conclusion is supported by the legislative history of the foregoing language of the Bankruptcy Act, which was well described by the bankruptcy court in
 
 Chugiak Boat Works:
 

 In 1967, Congress amended Chapters X, XI, and XII of the Bankruptcy Act of 1898 to sanction the result that had been reached by the Courts under the administrative expense provisions of the Act. The amendment explicitly provided that any executory contract entered into or assumed during the reorganization proceeding but rejected after the conversion to straight bankruptcy constituted an administrative expense of the reorganization proceeding. The legislative history indicates that the amendment was intended to resolve confusion over how such executory contracts should be treated and to recognize the rights of those parties “who have dealt with an officer of the court in the debtor relief proceeding.” Senate Report No. 90-749, 90th Cong. 1st Sess. (1967), [1967 U.S.C.A.A.N. at] 2002, 2005. Thus, pursuant to the 1967 amendment, all exec-utory contracts originally entered into during the reorganization as well as all execu-tory contracts assumed during that time were automatically granted administrative expense priority.
 

 18 B.R. at 295 (footnote omitted).
 

 Moreover, even before Congress added this clarificatory language to the Bankruptcy Act, it was well-established in this Circuit that administrative priority was available
 
 either
 
 if the trustee assumed an executory contract
 
 or
 
 if the estate received demonstrable benefits under the contract.
 
 American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,
 
 280 F.2d 119, 124 (2d Cir.1960) (Lumbard, C.J.) (“The claim of
 
 *28
 
 a creditor having an executory contract with the debtor at the time the debtor’s petition is filed is entitled to priority under these provisions only if the trustee or debtor in possession elects to assume the contract
 
 or
 
 if he receives benefits under it.”) (emphasis added);
 
 see also
 
 2 CollieR on BankRuptcy ¶ 365.01, at 365-20 (explaining that under § 70b of the Bankruptcy Act, which preceded § 365, the price of securing “continued mutuality” upon assumption of an executory contract “was nothing short of complete mutuality, that is, assumption by the estate of the bankrupt’s liabilities, not as a matter of granting a distributive share, but by performance in full, just as if bankruptcy had not intervened”).
 

 Absent a clear Code directive, or legislative history that directly addresses the issue and reaches a contrary result, the rule of construction set forth in
 
 Dewsnup
 
 dictates that Nostas’s claim for post-rejection rental damages should be governed by Bankruptcy Act practice.
 
 See Dewsnup,
 
 502 U.S. at 419, 112 S.Ct. at 779. That practice strongly supports the conclusion that Nostas’s claim was entitled to administrative expense status. This result, moreover, agrees with our earlier analysis that the Code’s timing provisions, together with the rules governing “benefit,” indicate that all future rent accruing under an assumed lease is entitled to the status of an administrative expense. Accordingly, we so hold.
 

 B.
 
 The § 502(b)(6) Cap on Damages for Future Rent
 

 Because it determined that Nostas’s claim was not an administrative expense, the district court never reached the issue of whether § 502(b)(6) limits Nostas’s claim arising from the assumed leases to one year’s worth of future rent. Since we conclude that such future rent is an administrative expense, we must now decide whether § 502(b)(6) caps the rent.
 

 Section 502(b)(6) requires a court to allow a claim except to the extent that it exceeds one year’s rent due under the lease.
 
 [6]
 
 This cap is designed to prevent a landlord’s single unsecured claim — which, depending on the length of the lease, may be enormous — to elbow aside the other unsecured creditors. The trustee argues that “[t]he policy underlying Code § 502(b)(6) applies equally to claims arising under leases that have been assumed and those that have not.” Appel-lee’s Br. at 34. Indeed, because the drafters of the Code took such care to prevent a monstrous
 
 unsecured
 
 claim from swallowing up the estate, it might seem odd not only to give an analogous type of claim priority over unsecured creditors, but also to allow such a claim in its entirety, merely because it arose from an assumed lease.
 

 Sensible as this policy argument might be, we do not find the Code ambiguous on this point. Section 502, which contains the cap on future rent, applies only to “a claim or interest, proof of which is filed under section 501.” 11 U.S.C. § 502(a). Section 501 prescribes the method for filing proofs of prepetition claims against the debtor and certain postpe-tition claims that are deemed to have arisen prepetition. It does not apply to administrative expenses payable by the debtor, which must be requested pursuant to § 503.
 
 See also id.
 
 § 507 (referring to “expenses and claims”). And because § 502 does not apply to administrative expenses, it cannot cap future rent due under an assumed lease.
 

 The legislative history of § 502(b)(6) confirms that, at least on this score, Congress said what it meant. H.R.Rep. No. 595, 95th Cong., 2d Sess. 353 (1977); S.Rep. No. 989,
 
 *29
 
 95th Cong., 2d Sess. 63 (1978), 1978 U.S.C.A.A.N. 5849, 6309 (stating that § 502(b)(6) “does not apply to limit administrative expense claims for use of the leased premises to which the landlord is otherwise entitled”);
 
 see also Multech,
 
 47 B.R. at 751 (explaining that the policy of preventing landlord’s unsecured claim from crowding out other unsecured creditors “is no longer germane in the ease of an assumed contract or lease, since the resulting obligations and liabilities are elevated to a priority status and no longer fall in the class of general unsecured creditors”);
 
 In re Johnston, Inc.,
 
 164 B.R. at 555 (stating that § 502(b)(6) does not limit administrative expense claims); 2 Collier on BANKRUPTCY ¶ 365.08, at 365-67 (15th ed. 1995) (“[T]he limitation upon the amount of an allowed claim arising from breach of a lease in section 502(b)(6) of the Code does not apply to leases assumed and thereafter rejected in the case.”) (footnotes omitted) (citing Multech).
 

 C.
 
 Brokerage and Attorneys’Fees
 

 Finally, we believe that the district court correctly denied Nostas’s claims for brokerage and attorneys’ fees. By failing to press its claim for such fees before the district court, Nostas did not preserve that issue for review by either the district court or this Court.
 
 See Klein Sleep,
 
 173 B.R. at 300 n. 5.
 

 III. Conclusion
 

 It would surely have been better if Congress had spelled out its intentions as to assumed leases in the Code, rather than leaving it up to the courts to clean up the ambiguities. But, under the circumstances, clean them up we must. The trustee complains that the rule we pick — a rule that accords administrative priority to claims for all future rent under an assumed lease — is overly generous to landlords, since it gives them a lion’s share of estates upon liquidation. While that may seem to be the case, we doubt that it will work out that way in practice. Under the rule we adopt, bankruptcy courts will rarely find that assuming liability for all future rent under a long-term lease is in the best interests of the estate — including the interest of the general creditors — unless the rental terms are highly advantageous. They will therefore block assumption of such leases except in unusual cases. As a result, landlords will find themselves with unsecured claims capped at one year’s worth of future rent.
 

 This may also seem undesirable, especially since in some such cases the tenant properly wishes to continue the rental. But this too is not quite the end of the story, for bankruptcy courts may have another option open to them. Faced with the unattractive choice of either requiring a bankrupt tenant to reject its long-term lease (and thereby possibly dooming the reorganization to failure) or letting it assume the lease (and leaving the general creditors with a paltry recovery should liquidation ensue), one bankruptcy court suggested that it could instead put off the decision on whether or not to assume a long-term lease. It could delay, the court stated, until the moment of confirmation, when the debtor’s chances of rehabilitation would finally be clear.
 
 See Monica Scott,
 
 123 B.R. at 993 (“Unless, the Congress addresses this situation, cause will undoubtedly be found to exist, as a matter of course, for extending to confirmation the time to assume or reject significant leases in Chapter 11 cases.”),
 
 id.
 
 n. 8 (citing 11 U.S.C. § 365(d)(4), which permits bankruptcy courts to extend the 60-day assumption/rejection period “for cause”). The uncertainty engendered by such an approach would give the bankruptcy court significant leverage over both tenant and landlord, and might well lead to a renegotiation of the long-term lease. The tenant who wishes to retain control over the premises has an interest — arising out of fear that the court will force rejection of the original lease — in renegotiating the lease, though perhaps for a shorter term. The landlord also has an interest in renegotiating the lease to escape the limbo between assumption and rejection. In such circumstances the landlord might well prefer to recover some guar
 
 *30
 
 anteed amount of future rent, as an administrative expense, under a new contract rather than risk having the lease rejected and the recovery limited to a fractional share of one year’s worth of future rent, as an unsecured claim, under the pre-existing contract.
 
 [7]
 

 None of this is before us today. But we do note that the rule that we enunciate may not be quite as rigid as it looks. It may well operate, like so many other default rules in contract law, only as a backdrop against which the parties — here the landlord and tenant — can renegotiate to reach a satisfactory, middle solution.
 

 [[Image here]]
 

 For the reasons stated above, we hold that claims for future rent arising out of assumed leases are administrative expenses of the debtor’s estate, regardless of whether they are subsequently rejected, and that they are not capped at a year’s worth of unpaid rent by 11 U.S.C. § 502(b)(6), We reach this conclusion in light of the prior practice under the Bankruptcy Act, the timing provisions of the Code, and an understanding that debtors generally benefit from court-approved assumptions of executory contracts and unexpired leases.
 

 Reversed to the extent that the court disallowed Nostas’s claim for future rent as an administrative expense, and remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . Throughout the proceedings, both the bankruptcy court and the district court treated January 29, 1993, as the date when the lease was rejected, even though the bankruptcy court did not hear the trustee’s motion to reject the lease until March 30, 1993. Because the precise date of rejection is not an issue on appeal, we shall continue to refer to January 29 as the date of rejection for the salte of convenience.
 

 [2]
 

 . Because Nostas relet the premises beginning on July 1, 1993, it claimed the entire rent due under the Klein Sleep lease from January 29, 1993 through June 30, 1993 (totalling approximately $38,000), plus the difference between the rent it would have collected under the remainder of the Klein Sleep lease (approximately $215,-000) and the rent due trader the new lease (approximately $157,000), for a total claim of $96,-000 in post-rejection rent.
 

 [3]
 

 . According to 11 U.S.C. § 503(b)(1)(A), "there shall be allowed administrative expenses ... including ... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....”
 

 [4]
 

 .Section 365(g) provides in relevant part:
 

 [T]he rejection of an ... unexpired lease of the debtor constitutes a breach of such ... lease—
 

 (1) if such ... lease has not been assumed ..., immediately before the date of the filing of the petition; or
 

 (2) if such ... lease has been assumed ...—
 

 (A) if before such rejection the case has not been converted [to a liquidation proceeding], at the time of such rejection; or
 

 (B) if before such rejection the case has been converted [to a liquidation proceeding]—
 

 (i) immediately before the date of such conversion, if such ... lease was assumed before such conversion; or
 

 (ii) at the time of such rejection, if such ... lease was assumed after such conversion.
 

 [5]
 

 . When a reorganization case is converted to a liquidation proceeding after the lease has been assumed but before it is rejected, breach is deemed to have occurred immediately before the conversion. 11 U.S.C. § 365(g)(2)(B).
 

 [6]
 

 . Section 502(b)(6) provides, more fully, that the bankruptcy court shall allow a lessor's claim for damages arising from the termination of a lease of real property, except to the extent that the claim exceeds
 

 (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
 

 (i) the date of the filing of the petition; and
 

 (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
 

 (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates....
 

 Because in the case before us § 506(b)(6) operates to limit rent claims to one year — -rather than fifteen percent of all future rent capped at three years — we refer to this section as imposing a "one-year cap.”
 

 [7]
 

 . In either event, of course, the landlord is entitled to recover as an administrative expense the rent due while the debtor and the bankruptcy court debate whether to assume the lease. 11 U.S.C. § 365(d)(3).