In re HANLIN GROUP, INC., Hanlin Chemicals West Virginia, Inc., LCP National Plastics, Inc. and LCP Transportation, Inc., Debtors.

OIL, CHEMICAL & ATOMIC WORKERS, AFL–CIO–CLC and its Local Union 3–586, on behalf of the members employed at Hanlin Chemical, West Virginia, Inc., Plaintiffs,

v.

HANLIN GROUP, INC., Hanlin Chemicals West Virginia, Inc., LCP Plastics, Inc., and LCP Transportation, Inc., Defendants.

Bankruptcy Nos. 91–33872, 91–33875.
Adv. No. 92–3446/TS.

United States Bankruptcy Court,
D. New Jersey.

Jan. 5, 1995.

330

Kary L. Moss, Jane Sugar Law Center for Economic and Social Justice, Detroit, MI, and Bennet D. Zurofsky, Reitman Parsonnet, Newark, NJ, for plaintiffs.

Richard C. Cooper, McCarter & English, Newark, NJ, for defendants.

STEPHEN A. STRIPP, Bankruptcy Judge.

This memorandum opinion constitutes the court's decision on a motion for partial summary judgment filed by plaintiff Oil, Chemical & Atomic Workers International Union, AFL–CIO–CLC ("OCAW") against debtor-in-possession Hanlin Group, Inc. and its affiliated companies ("Hanlin" or "Debtor") as to OCAW's complaint in this adversary proceeding. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

OCAW alleges that, after Hanlin filed its petition for protection under chapter 11 of title 11 United States Code (hereinafter "Bankruptcy Code" or "Code"), it laid off certain employees at its Moundsville, West Virginia plant without providing 60 day's notice in violation of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 et seq. If OCAW prevails on its claim, the affected employees represented by OCAW will be entitled to "back pay" as defined by WARN.

The sole issue raised by OCAW's summary judgment motion relates to the priority of its members' claims for back pay should it prevail on the merits of this action. OCAW contends that its members' claims are entitled to status as administrative expenses, because they are "wages" for work performed during the case; because they are claims which arise from a postpetition transaction with the debtor, and the consideration supporting the right to payment was of benefit to the estate; or because they are damages for an injury caused by the debtor's postpetition operation of the business. Hanlin contends that any damages would have the status of general unsecured claims, as no benefit was received by the estate.

For the reasons set forth below, OCAW's motion for partial summary judgment is granted; to the extent that any damages are recovered, they will be administrative expenses of the estate.

## SUMMARY JUDGMENT STANDARD

Although OCAW captioned its motion as one for a declaration that any judgment obtained shall be entitled to treatment as an administrative claim, it is actually a motion for partial summary judgment as to that

issue, and has been treated as such by this court.

OCAW's motion for partial summary judgment was filed under Fed.R.Bankr.P. 7056, which makes Fed.R.Civ.P. 56 applicable in adversary proceedings. In accordance with that rule, summary judgment:

> should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law.

*Spain v. Gallegos,* 26 F.3d 439, 446 (3d Cir. 1994) (quoting *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.,* 998 F.2d 1224, 1230 (3d Cir.), *cert. denied* — U.S. ——, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993)).

The parties agree that, with respect to the issue presented, there is no genuine issue of material fact, and that partial summary judgment is therefore appropriate.

## FACTS

Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code on July 10, 1991. Debtor continued operation of its business, including the Moundsville, West Virginia plant, after the filing of the petition.

In August, 1991 Debtor halted operation of the Moundsville plant. It eventually laid off the plant employees, including employees represented by OCAW. OCAW contends that these lay-offs were in violation of WARN's provisions regarding advance notice of a plant closing. It seeks approximately $1.2 million in damages.

## CONCLUSIONS OF LAW

### I. *WARN Requires that Certain Employers Provide Notice of Impending Lay–Offs and Plant Closings*

WARN requires that certain employers provide their employees with advance notice of plant closings and mass layoffs. It states in relevant part:

> An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order ... to each affected employee....

29 U.S.C. § 2102(a)(1).

■ The Debtor is an employer for purposes of WARN.

> [A] fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 Fed.Reg. 16042, 16045 (1989). In this case, the Debtor kept the plant in operation for at least one month after the petition was filed, and continued to operate the business as a whole for the benefit of all parties in interest. It is therefore subject to WARN.

WARN allows aggrieved parties to bring a private cause of action for failure of an employer to comply with its terms. It also provides for a specific calculation of damages.

> Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for ... back pay for each day of violation ...

29 U.S.C. § 2104(a).

The question raised by OCAW's summary judgment motion is whether any such "back pay" is entitled to administrative expense status under Bankruptcy Code §§ 507 and 503(b)(1)(A).

### II. *Administrative Status is Granted Only to Certain Categories of Claims*

■ The priority of distribution of claims in a case under the Bankruptcy Code is set forth at Code § 507. First priority distribution rights as administrative expenses are accorded to "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ..." 11 U.S.C. §§ 503(b)(1)(A) and

507(a)(1). Such expenses arise from transactions with a debtor-in-possession, where the consideration supporting the transaction is beneficial to operation of the debtor's business. *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984).

■ Claims resulting from injury caused by the continued operation of the business by the debtor-in-possession are also classified as administrative expenses, notwithstanding the lack of benefit to the estate. *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (property owner whose property was destroyed as a result of negligence of receiver in operation of bankrupt business is entitled to recover ahead of general creditors); *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200 (1st Cir.1985) (damages for breach of injunction against operation in violation of zoning ordinance are given administrative status); *Kapernekas v. Continental Airlines (In re Continental Airlines)*, 148 B.R. 207, 216 (Bankr.D.Del.1992) ("[T]he Bankruptcy Code interfered with the normal course of events in which the business would have failed. The Bankruptcy Code authorized such interference in order to afford creditors a better opportunity to recoup their losses, under the theory that a business is worth more as a going concern than it would be if liquidated. However, should the business cause harm during this period in which it is operating for the benefit of the creditors, fairness dictates that the claims of those to whom it caused harm must have priority over those for whose benefit it was operating.").

■ The burden of proving that the claim is entitled to administrative priority is on the party asserting such status. *Woburn Associates v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1 (1st Cir.1992), *cert. denied sub nom., Kahn v. Juniper Development Group*, — U.S. —, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993).

### III. *"Back Pay" under WARN is Entitled to Priority as an Administrative Claim for Wages*

A. *"Back Pay" Under WARN Constitutes "Wages" Under the Code*

■ Any analysis of whether back pay under WARN constitutes wages under the Bankruptcy Code must begin with the Code definition of the term "wages".

■ While section 503 of the Code does not define the term, section 507 defines "wages" to include "vacation, severance, and sick leave pay". 11 U.S.C. § 507(a)(3). The provisions of the Bankruptcy Code must be read in pari materia to ascertain their meaning. *See, e.g., United States Savings Association v. Timbers of Inwood Forest*, 484 U.S. 365, 370–72, 108 S.Ct. 626, 629–31, 98 L.Ed.2d 740 (1988). Thus, the term "wage" has the same meaning under both section 503 and section 507.

The only courts which have addressed the issue of whether back pay under WARN is wages for the purposes of the Code have found that, given the compensatory nature of back pay, it must be in the nature of wages under the Code. *See In re Riker Industries, Inc.*, 151 B.R. 823 (Bankr.N.D.Ohio 1993); *In re Cargo*, 138 B.R. 923 (Bankr.N.D.Iowa 1992).

■ Both *Riker* and *Cargo* involve the issue of whether back pay awarded for a violation of WARN committed within the 90 days prior to the filing of a bankruptcy petition constitutes "wages" for the purpose of 11 U.S.C. § 507(a)(3). The cases agree that:

> The "back pay" liability of the employer is comparable to privately negotiated severance pay. It is severance pay in lieu of notice, imposed by statute. It is a "quasi contractual" obligation. As a statutorily imposed form of severance pay, it is "wages" within the meaning of § 507(a)(3) of the Code.

*In re Cargo*, 138 B.R. at 927. *See also Straus–Duparquet, Inc. v. International Brotherhood of Electrical Workers, AF of L, CIO*, 386 F.2d 649, 651 (2d Cir.1967) ("Since severance pay is compensation for termination of employment and since the employment of these claimants was terminated as an incident of the administration of the bankruptcy's estate, severance pay was an expense of administration and is entitled to priority as such an expense."). The wages

are "earned" at the time of the termination of employment. *In re Cargo*, 138 B.R. at 927.

*United Steelworkers of America, AFL–CIO–CLC v. North Star Steel Co.*, 5 F.3d 39, 42 (3d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994), interpreting the back pay provision of WARN, is not to the contrary. *North Star* involved the issue of the measure of compensation an employee is entitled to under WARN. The employer urged the court to adopt a "lost earnings" interpretation, that is, that the employees were entitled to receive the earnings they lost due to the WARN violation. The Third Circuit rejected the "lost earnings" concept, stating, "We conclude instead ... that WARN uses the term 'back pay' simply as a label to describe the daily rate of damages payable." *Id.* Thus, employees were entitled to 60 days of pay, regardless of how many days they would have worked had they been given 60 days' notice of the closing or lay-off. This does not, however, alter the fundamentally compensatory nature of the remedy.

■ WARN gives the employer a choice—it may provide 60 days' notice of closing or layoff to its employees, keeping the business open and incurring operating expenses during that period; or it may shut down its operations with little or no notice to its employees, saving operating expenses, but providing back pay to its employees, in compensation for the lack of notice, in accordance with a statutory formula. Thus, the purpose of WARN is to provide a statutory form of severance pay.

Given its compensatory nature as statutory severance pay, back pay under WARN constitutes wages for the purposes of the Bankruptcy Code.

B. *"Back Pay" Awarded for a Postpetition Violation of WARN is Wages for "Services Rendered After the Commencement of the Case"*

■ Not all wages are entitled to priority as administrative claims under the Bankruptcy Code. The Code establishes a three-tier system of priorities: wages "for services rendered after the commencement of the case" are entitled to first priority as administrative

claims, 11 U.S.C. §§ 507(a)(1), 503(b)(1)(A); wages earned within 90 days before the date of filing of the petition or the date of the cessation of business, whichever comes first, are entitled to third priority, but only to the extent of $2000 per person, 11 U.S.C. § 507(a)(3); and all other wage claims are entitled to the same priority as other general unsecured claims.

Back pay under WARN is deemed to be earned at the date of termination. *In re Cargo*, 138 B.R. at 927. Because the date of termination occurred postpetition, any back pay due for a WARN violation will be deemed as earned postpetition, and therefore in the nature of wages for services rendered after the commencement of the case entitled to administrative expense status.

IV. *"Back Pay" Awarded for a Postpetition Violation of WARN is Entitled to Priority as an Actual, Necessary Cost and Expense of Preserving the Estate*

■ Even if back pay awarded for a postpetition violation of WARN is not wages for services rendered after the commencement of the case, it would still be entitled to priority as an administrative claim because, given the "decisive statutory objective" of "fairness to all persons having claims against an insolvent," persons injured by a debtor-in-possession in its continued operation of the debtor's business are entitled to administrative priority. *Reading*, 391 U.S. at 477, 88 S.Ct. at 1763.

> [T]he present petitioner did not merely suffer injury at the hands of an insolvent business; it had an insolvent business thrust upon it by operation of law.... [T]he question is whether [the entity injured by the debtor-in-possession] should be subordinated to, should share equally with, or should collect ahead of those creditors for whose benefit the continued operation of the business ... was allowed.

391 U.S. at 478, 88 S.Ct. at 1763. It was entitled to do so. *See also Charlesbank*, 755 F.2d at 203; *Kapernekas*, 148 B.R. at 216.

■ Contrary to Hanlin's contention, the *Reading* decision is not limited to tort claims. Rather, it applies to all "costs ordinarily inci-

dent to operation of a business," *Reading*, 391 U.S. at 483, 88 S.Ct. at 1766, including damages for any injuries caused by the debtor-in-possession. *See generally Charlesbank*, 755 F.2d at 203 (applying *Reading* to damages resulting from intentional act of debtor-in-possession in violating injunction); *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867 (2d Cir.1971) (applying *Reading* to damages resulting from infringement of patent).

## V. *The Limited Scope of This Ruling*

In this opinion, the court has determined solely that *if*, as OCAW alleges, the debtor violated WARN when it closed its Moundsville, West Virginia plant, any damages arising from such violation would be entitled to administrative expenses status. It must be emphasized that the court has not been asked on this motion to determine, and does not determine, *whether* the debtor violated WARN when it closed the subject plant, or the amount of any damages caused by such violation. Those issues as to the merits of OCAW's claim in this adversary proceeding remain to be determined.

### CONCLUSION

For the foregoing reasons, this court concludes that if OCAW's members are entitled to damages for a postpetition violation of WARN, such damages are entitled to priority as administrative expenses of the estate. Therefore, OCAW's motion for partial summary judgment is granted. The attorney for OCAW is to submit a form of order within ten days pursuant to D.N.J.Bankr.Ct.R. 4(c). Said order is also to include a provision scheduling a pretrial conference for January 9, 1995 at 2:00 P.M. Pretrial memos are to be filed and served by December 30, 1994.