**In re JAMESWAY CORPORATION, et al., Debtors.**

**Bankruptcy No. 95 B 44821 (JLG).**

United States Bankruptcy Court, S.D. New York.

Nov. 21, 1996.

See also: 179 B.R. 33; 201 B.R. 73.

Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Debtors.

Gordon, Feinblatt, Rothman Hoffberger & Hollander, LLC, Baltimore, MD, Zalkin, Rodin & Goodman LLP, New York City, Co–Counsel to the Landlords.

Traub, Bonacquist & Fox, New York City, for Unsecured Creditors' Committee.

*DECISION ON MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO ALLOWANCE OR DISALLOWANCE OF ALLEGED ADMINISTRATIVE CLAIMS ARISING FROM DEBTOR'S REJECTION OF LEASES OF NON–RESIDENTIAL REAL PROPERTY*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Pursuant to a confirmed chapter 11 plan of reorganization in a prior case ("Jamesway I"), Jamesway Corporation ("Jamesway") assumed certain non-residential real property leases. In this case, Jamesway's second chapter 11 case ("Jamesway II"), we authorized Jamesway to reject some of those leases. Certain landlords (defined hereinafter as the "Landlords") filed claims on account of those lease rejections and otherwise sought to compel payment of those claims. Jamesway objects to those claims. Landlords seek summary judgment allowing their claims as administrative priority expenses under §§ 503(b)(1) and 365(g)(2) of title 11, United States Code (the "Bankruptcy Code"). Jamesway and the official committee of unsecured creditors appointed in this case (the "Committee") oppose that motion. Jamesway seeks summary judgment disallowing the Landlords' disputed administrative claims and determining that those claims are pre-petition general unsecured claims subject to the limitations in § 502(b)(6) of the Bankruptcy Code. We deny Landlords' motion for summary judgment and grant Jamesway's cross-motion for summary judgment.

### Facts

The parties stipulated to the relevant facts in a Joint Statement pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 7056–1.

At all relevant times, Jamesway operated discount department stores under the "Jamesway" name. On or about July 19, 1993, Jamesway and its affiliates commenced Jamesway I by filing separate chapter 11 petitions for reorganization in this district. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, those debtors operated as debtors-in-possession until January 28, 1995, when their joint plan of reorganization, confirmed by court order dated December 12, 1994 (the "Jamesway I Plan"), became effective. Under the confirmation order, those debtors assumed 93 non-residential real property leases, including each of Landlords'[1] leases (the "Leases"). Landlords did not oppose confirmation of the Jamesway I Plan.

On October 19, 1995, after the Jamesway I Plan was substantially consummated pursuant to § 1101(2) of the Bankruptcy Code, Jamesway and its affiliates commenced Jamesway II by filing separate chapter 11 petitions for reorganization in this district. They are in the process of liquidating their

---

1. Landlords include Tamaqua Associates, Punxsutawney Associates, Sanndrel of Pennsylvania, Inc. ("Sanndrel"), L.P.R. Associates ("LPR"), Hilltown Plaza Associates, Norwich Shopping Center Co., Gilmar Associates, L.L.C., HRE Properties, Martin Development and Realty Co./ K.D. Martin, Cape May Mall Limited Partnership, Edwin Morgens and Bruce Waterfall as agents and Nominees for Morgens Waterfall Income Partners, Restart Partners, L.P., Restart Partners II, L.P., Restart Partners III, L.P., Restart Partners IV, L.P., and Hammonton Associates.

assets. Jamesway I is open, no order closing those cases having been entered as of the date of this opinion. No party-in-interest has moved either to dismiss Jamesway II or to convert Jamesway I to a case under chapter 7 of the Bankruptcy Code.

By orders dated January 11, 1996, February 29, 1996, and June 4, 1996, we authorized the Jamesway II debtors to reject 41 unexpired leases of non-residential real property, including each of the Leases, effective as of February 29, 1996. Each Landlord timely filed a proof of claim herein asserting administrative expense claims under §§ 365(g) and 503(b) of the Bankruptcy Code for, among other things, damages arising from the rejection of the Leases. On or about April 24, 1996, LPR moved to compel Jamesway to pay its alleged $4,474,493.76 administrative claim and on May 13, 1996, Sanndrel sought similar relief with respect to its alleged administrative claim. By Omnibus Objection to Administrative Proofs of Claim, debtors objected to the administrative claims and opposed LPR's motion. Landlords timely responded to that objection.

Landlords and LPR seek partial summary judgment pursuant to Bankruptcy Rule 7056 declaring that they hold allowed administrative priority claims equal to the rent reserved under each Lease for the balance of each lease. Jamesway seeks summary judgment that those claims are general unsecured claims capped by § 502(b)(6) of the Bankruptcy Code.

By agreement among the parties, the question before us is whether Landlords' Lease rejection claims are priority administrative expenses under §§ 503(b) and 365(g)(2) of the Bankruptcy Code, or general unsecured claims capped under § 502(b)(6) of the Bankruptcy Code.

### Discussion

Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (B) and (O).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Knight v. United States Fire Insur. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). There is no dispute, genuine or otherwise, regarding the facts material to a determination of the priority of Landlords' claims against the Jamesway II estate arising from rejection of the Leases. As such, the motions are ripe for resolution.

The treatment of a claim arising from the rejection of an unexpired lease is governed by §§ 365(g) and 502(g) of the Bankruptcy Code. Section 365(g) provides as follows:

Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition; or

(2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

(A) if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, at the time of such rejection; or

(B) if before such rejection the case has been converted under section 1112, 1208, or 1307 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

11 U.S.C. § 365(g). Section 502(g) provides that:

> A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(g). Thus, while § 365(g) deals with timing considerations, § 502(g) makes a claim arising from rejection of an unassumed lease a pre-petition claim. Unless the debtor secures its lease obligations, the landlord's lease rejection claim will be a general unsecured claim. *See* 11 U.S.C. § 506(a). The statute is silent regarding the priority of a claim resulting from the rejection of a previously assumed lease.

■ In *Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.),* 78 F.3d 18 (2d Cir.1996) (cited hereinafter as *"Klein Sleep"*), our court of appeals addressed that issue. In that case, the debtor had leased a store from Nostas Associates ("Nostas") in Paramus, New Jersey prior to filing its chapter 11 case. Klein Sleep was authorized to assume the lease by order of the bankruptcy court. Approximately two and one-half years later, after the debtor's reorganization efforts failed, the court appointed a chapter 11 trustee to liquidate the debtor's remaining assets in chapter 11. *Id.* at 21. The trustee rejected the Nostas lease and surrendered the premises to Nostas. Nostas relet the premises and asserted an administrative priority claim for, among other things, the difference between the total amount of future rent reserved under the lease with Klein Sleep and the rent under the new lease. *Id.* The bankruptcy court allowed the future rent claim as a general unsecured claim subject to § 502(b)(6). The district court affirmed, finding that the future rent claim was not entitled to administrative expense status be-

cause the post-surrender damages incurred by Nostas conferred no benefit upon the debtor's estate as required by § 503(B)(1)(A). *Id.* at 22.

The court of appeals reversed, holding that claims for future rent arising out of assumed leases are entitled to administrative expense priority regardless of whether the leases are subsequently rejected and that such claims are not capped by § 502(b)(6). The court based its ruling upon its conclusion that Klein Sleep benefitted from assuming the lease, and its analysis of §§ 365(g) and 502(g) of the Bankruptcy Code and practice under the former Bankruptcy Act. *Id.* at 22–30.

Landlords contend that after directing the appointment of a chapter 11 trustee, the *Klein Sleep* bankruptcy court established a "de facto Chapter 7 filing date" and accorded all expenses arising after that date "super-priority" status as "burial expenses" associated with winding up the estate. Because the court of appeals did not question the propriety of that alleged "de facto Chapter 7 bifurcation", Landlords contend that we should read *Klein Sleep* to apply here where there are successive chapter 11 cases filed on behalf of the same debtors, and accord their claims administrative priority status in this case. Although the circuit court noted that the bankruptcy court conferred super-priority status to the rent payable during the chapter 11 liquidation period, *id.* at 21, it made no mention of the alleged "de facto chapter 7 filing date". Neither did the district court. *See In re Klein Sleep Products, Inc.,* 173 B.R. 296 (S.D.N.Y.1994). *Klein Sleep* involved the assumption and subsequent rejection of a lease in the same chapter 11 case—albeit by different fiduciaries. It is not applicable to this case.

Landlords' proposed application of *Klein Sleep* assumes that the term "debtor" used in § 365(g)(2) ("the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease ... if such contract or lease has been assumed ... at the time of such rejection") means any debtor under the Bankruptcy Code, irrespective of whether the "debtor" rejecting the lease is the "debtor" that assumed it. They maintain that because

§ 365(g)(2) refers to leases assumed under a confirmed plan and post-assumption rejection under those circumstances could occur only in a subsequently filed case, the statute specifically contemplates this result. They also contend that because § 502(g) is silent concerning the treatment of claims arising from the rejection of assumed leases, it is reasonable to treat them as § 503(b)(1) administrative expenses, even in subsequent proceedings.

▮ However, a lease assumed under a confirmed plan of reorganization could be rejected prior to plan consummation or in a superseding chapter 7 case. Moreover, Landlords' construction of §§ 365 and 502 ignores basic principles of bankruptcy law. The term "debtor" means the legal entity created upon the commencement of a case under title 11. *See* 11 U.S.C. § 101(13). In a case under chapter 11, a "debtor-in-possession" is the legal entity created. *See* 11 U.S.C. § 1101(1). An "estate" is created upon the commencement of a case under §§ 301, 302 or 303 of the Bankruptcy Code. 11 U.S.C. § 541(a). The confirmation of a chapter 11 plan of reorganization vests all estate property in the debtor, except as provided otherwise in the plan or confirmation order. 11 U.S.C. § 1141(b). Subject to the provisions of the plan, estate property administered under a plan is free and clear of all interests and claims of creditors, interest holders or partners. 11 U.S.C. § 1141(c). Upon plan confirmation, the debtor-in-possession and the bankruptcy estate cease to exist, even though the case may not be closed and the bankruptcy court retains jurisdiction over certain matters. *In re Roy Gooden Plumbing & Sewer Co., Inc.*, 156 B.R. 635, 637 (Bankr.E.D.Mo.1993) (debts incurred by reorganized debtor under confirmed plan of reorganization not entitled to allowance and payment in superseding chapter 7 case as administrative expenses); Weintraub & Resnick, BANKRUPTCY LAW MANUAL ¶ 8.23[5] at p. 8–148 (3d ed. 1992); *see also* Elizabeth Warren, *A Theory of Absolute Priority*, 1991 Ann.Surv.Am.L. 9, 12 (1992) ("There are three entities involved in the typical successful Chapter 11 confirmation process: the pre-bankruptcy debtor, who gives way to the debtor-in-possession, who disappears at confirmation when the post bankruptcy entity acquires the assets of the estate").

▮ The estate created in one bankruptcy case is distinct from that created upon the commencement of a subsequent case. *Stuart v. Carter (In re Larsen)*, 59 F.3d 783, 787 (8th Cir.1995) (filing of chapter 7 petition created new estate independent of estates created in earlier chapter 11, 12 and 13 cases). No estate is created upon the conversion of a case from one chapter to another. *See* 11 U.S.C. § 348(a); *see also Kepler v. Independence Bank of Madison (In re Ford)*, 61 B.R. 913, 916 (Bankr.W.D.Wis. 1986) ("a chapter 7 case which has been converted from a case under another chapter is considered to have been commenced on the date of the original petition"); *In re Bullock*, 41 B.R. 637, 639 (Bankr.E.D.Pa.1984) (discussing § 348(a)). Thus the reference to a "debtor" in § 365(g)(2) can only be to the debtor that previously assumed and is then rejecting the lease. It cannot refer to a debtor in a different case under title 11.

▮ Landlords' construction of §§ 365 and 502 also ignores settled standards governing the allowance of administrative priority claims. The "actual, necessary costs and expenses of preserving the estate" are entitled to administrative priority status under the Bankruptcy Code. *See* 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1). For an expense to qualify under § 503(b) as an expense of administration, it must either benefit the estate, or arise in connection with business or activities carried on by the estate. *See, e.g., Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986) (withdrawal liability under pension plan would be considered administrative expense "only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business'") (quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 953 (1st Cir.1976)); *In re B. Cohen and Sons Caterers, Inc.*, 143 B.R. 27

(E.D.Pa.1992) (customer's claim for post-petition tort injuries entitled to administrative priority); *Chemical & Atomic Workers v. Hanlin Group, Inc. (In re Hanlin Group, Inc.),* 176 B.R. 329, 333 (Bankr.D.N.J.1995) ("[c]laims resulting from injury caused by the continued operation of the business by the debtor-in-possession are also classified as administrative expenses, notwithstanding the lack of benefit to the estate") (citations omitted); *In re Multech Corp.,* 47 B.R. 747, 750–51 (Bankr.N.D.Iowa 1985) ("[t]he rejection of an assumed contract arises directly from a transaction with the debtor-in-possession. Thus, it is the debtor-in-possession which has caused the legally cognizable injuries and the claims arising from those actions are entitled to administrative expense priority"); 3 COLLIER ON BANKRUPTCY ¶ 503.04 (15th rev. ed. 1996) (and cases cited therein). The claimant bears the burden of proving that its claim is entitled to priority as an administrative expense. *Woburn Associates v. Kahn (In re Hemingway Transport, Inc.),* 954 F.2d 1, 5 (1st Cir.1992), *cert. denied sub nom. Kahn v. Juniper Development Group,* 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993); *In re Hanlin Group, Inc.,* 176 B.R. at 333. The *Klein Sleep* court accorded Nostas' claim administrative priority status because it found that when Klein Sleep assumed the lease, it received an "actual benefit" in the form of an assignable right to occupy the premises for the future term of the lease. *Klein Sleep,* 78 F.3d at 25. The Jamesway II debtors never assumed the Leases. Because Jamesway derived no "actual benefit" from the Leases, Landlords' rejection damage claims are not entitled to administrative priority status. *See Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.),* 886 F.2d 859, 870 (7th Cir. 1989) (cited hereinafter as *"Jartran"*); *In re Larsen,* 59 F.3d at 787 (former bankruptcy counsel's claim against debtor for fees incurred in prior chapter 11 case and chapter 12 case which had been dismissed as bad faith filing was not entitled to administrative priority in chapter 7 case commenced nearly three years later pursuant to §§ 726(a)(1) because statute referred only to claims which had been afforded administrative expense status in pending chapter 7 proceeding); *see also In re Benjamin Coal Co.,* 978 F.2d 823, 826 (3d Cir.1992) (confirmation of chapter 11 plan discharged administrative claim previously granted to claimant under § 364(c)(1) for amounts loaned to debtor under lease assignment agreement; following confirmation, claimant had only an unsecured non-priority contractual claim based on terms of the plan, and was obligated to file timely a proof of claim after case was converted to chapter 7); *United States v. Shepherd Oil, Inc. (In re Shepherd Oil, Inc.),* 118 B.R. 741, 747 (Bankr.D.Ariz.1990) ("[t]he priority that a creditor may have in the initial Chapter 11 proceedings does not necessarily carry over in the subsequently filed Chapter 11 proceedings if the debtor has engaged in serial filings of Chapter 11 petitions.... As a result, the rights and remedies of a creditor may be substantially altered or impacted upon in subsequently filed Chapter 11 proceedings").

During and subsequent to the hearing on these motions, Landlords referred us to cases in which claims were allegedly afforded administrative priority notwithstanding the lack of any measurable economic benefit to the estate. With a single exception, *see In re Official Committee of Unsecured Creditors of White Farm Equip. Co.,* 943 F.2d 752 (7th Cir.1991), *cert. denied,* 503 U.S. 919, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992) (cited hereinafter as *"White Farm"* and discussed below), these cases involve either post-petition tort or employee severance claims. *See, e.g., Straus–Duparquet, Inc. v. Local Union No. 3 IBEW, AFL, CIO (In re Straus–Duparquet, Inc.),* 386 F.2d 649 (2d Cir.1967) (severance pay entitled to administrative expense priority in case under the former Bankruptcy Act); *Rodman v. Rinier (In re W.T. Grant Co.),* 620 F.2d 319 (2d Cir.) (same), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *Zelin v. Unishops, Inc. (In re Unishops, Inc.),* 553 F.2d 305 (2d Cir.1977) (same); *see also Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d at 98 (distinguishing withdrawal liability under multi-employer pension plan from severance pay). Post-petition tort claims are afforded administrative priority because they arise from the commissions or omissions of a debtor-in-possession or trustee during the case and are properly chargeable in full to the estate since tort victims have

"an insolvent business thrust upon [them] by operation of law" and it is equitable to prefer their claims "ahead of those creditors for whose benefit the continued operation of the business ... was allowed"). *Reading Co. v. Brown*, 391 U.S. 471, 478, 88 S.Ct. 1759, 1763, 20 L.Ed.2d 751 (1968); *see also Kapernekas v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 148 B.R. 207, 216 (Bankr.D.Del.1992) ("[t]he Bankruptcy Code authorizes such interference [with the normal course of business operations pursuant to which a business would have failed] in order to afford creditors a better opportunity to recoup their losses, under the theory that a business is worth more as a going concern than it would be if liquidated. However, should the business cause harm during this period in which it is operating under the protection of the code for the benefit of the creditors, fairness dictates that the claims of those to who it caused harm must have priority over those for whose benefit it was operating"). Severance pay is "compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated and ... is therefor 'earned' when the employees are dismissed." *Trustees of Amalgamated Ins. Fund v. McFarlin's Inc*, 789 F.2d at 104; *see also Metro. Distr. Serv., Inc. v. Local 153 OPEIU (In re Golden Distributors, Ltd.)*, 152 B.R. 35, 36 (S.D.N.Y. 1992) ("[t]he severance pay for terminated employees ... is a cost of carrying on business, and constitutes an administrative expense when the severance occurs post-petition. This is so, even if severance pay is calculated by formula according to an employee's length of employment, including service which was primarily pre-petition"). The policies for allowing those kinds of claims as administrative priority expenses are irrelevant to this case.

Landlords urge that their reading of § 365(g) is consistent with established practice under the former Bankruptcy Act, which granted "*automatic* protection (*i.e.*, administrative expense priority)" to executory contracts assumed during a reorganization that are later rejected. That "established practice", however, was not designed with serial chapter 11 filings in mind. It was to account for the treatment of claims arising from the termination of a lease or contract that was assumed or entered into during a reorganization case that failed and was superseded by a "straight bankruptcy" liquidation proceeding. Section 238(b) of the former Bankruptcy Act provided in relevant part that "[w]hen a contract entered into or assumed in a superseded proceeding is rejected, the resulting liability shall constitute a cost of administration of the superseded proceeding." 11 U.S.C. § 638 (repealed). The "superseded proceeding" referred to in § 238(b) was not a separate bankruptcy case. That provision was part of, and related solely to, Article XII of the former Bankruptcy Act, 11 U.S.C. §§ 636–638 (repealed), which dealt with "dismissals and adjudications [of bankruptcy]". Section 238(a) of the former Bankruptcy Act provided in relevant part:

> Upon the entry of an order directing that bankruptcy [*i.e.* liquidation] be proceeded with—
>
> (1) ... where the [reorganization] petition was filed under section 128 of this Act [*i.e.* an original petition], the proceeding shall thereafter be conducted so far as possible, in the same manner and with like affect as if an involuntary proceeding for adjudication had been filed at the time when the petition under this chapter was filed, and a decree of adjudication [of bankruptcy] had been entered at the time when the petition under this chapter was approved.

11 U.S.C. § 638(a) (repealed). The situation addressed in §§ 238(a) and 238(b) is the functional equivalent under the present statute of a liquidation within the same chapter 11 case or conversion of a chapter 11 case to a case under chapter 7. *See* 11 U.S.C. §§ 348(a) and 365(g)(2); *see also Klein Sleep*, 78 F.3d at 27 (discussing consistency of treatment of claims arising from rejection of assumed contracts under Bankruptcy Code and former Bankruptcy Act).

We recognize that § 365 may not have been drafted to account for the possibility of serial bankruptcy filings. *See White Farm*, 943 F.2d at 754. However, to read the term "debtor" in § 365(g) as Landlords do contravenes the plain language of the statute and well-settled case law and leads to absurd

results. For example, under Landlords' statutory construction, if a debtor in "case A" assumes and assigns a lease to a third party, and the assignee then files its own bankruptcy case ("case B")—thereby becoming a "debtor"—and rejects the lease without first assuming it, the landlord will be accorded an administrative priority claim in case B equal to the full amount of the rent payable under the lease. Nothing in the Bankruptcy Code supports such a conclusion.

In *Jartran*, the debtor entered into master lease agreements pre-petition with Fruehauf Corporation for approximately 20,000 vehicles. It assumed those leases pursuant to a plan of reorganization that was later substantially consummated. Jartran filed a second chapter 11 case to effect an orderly liquidation of its assets. Upon learning that Jartran intended to reject the master leases in the second case, Fruehauf argued that the entire amount due under the leases was entitled to administrative priority in the second case under § 365(g)(2)(A) of the Bankruptcy Code because the leases "were assumed and will be rejected in the same case; the two Jartran cases being in effect the same case." *In re Jartran, Inc.*, 71 B.R. 938, 940 (Bankr. N.D.Ill.1987), *aff'd*, 87 B.R. 525 (N.D.Ill. 1988), *aff'd*, 886 F.2d 859 (7th Cir.1989). The bankruptcy court rejected Fruehauf's argument, emphasizing that it did "not consider Jartran II as a continuation of Jartran I, but consider[ed] the two as separate cases as characterized by different objectives assets and claims." *Id.* at 941. Having made that determination, the court held that Fruehauf's claims were not entitled to administrative priority under § 365(g)(2)(A):

> It is a fundamental principle in bankruptcy law that [the] debtor-in-possession [in Jartran II] does not become a party to an executory contract unless such debtor assumes the contract in the manner provided by the statute [citations omitted]. Absent assumption of the Master Leases, [the debtor-in-possession in] Jartran II is not obligated to Fruehauf by way of a priority claim for rejection of the Master Leases.

*Id.* at 943. The Seventh Circuit agreed with both the bankruptcy and district courts that Jartran's "second chapter 11 filing [was] . . .

distinct from the first filing and proper." 886 F.2d at 870. It also agreed that § 365(g)(2) was inapplicable in the second case because "we are now dealing with Jartran II, and the leases have not been assumed in this proceeding." *Id.* at 871. Finally, emphasizing that the Jartran II estate was "not yet extant" at the time the master leases were assumed, the court found that the balance due under the leases and the other claims asserted by Fruehauf did not qualify as administrative expenses because they were not actual or necessary for preserving the Jartran II estate. *Id.*

The *Jartran* court properly recognizes the substantive legal difference between a single failed chapter 11 case in which the debtor is forced to liquidate in either the same case or by means of conversion to chapter 7, and the filing of a new chapter 11 case after substantial consummation of a confirmed plan of reorganization in the first case. For purposes of these motions, Landlords stipulated that Jamesway II was not filed in bad faith, that we need not consider whether serial bankruptcy filings are *per se* improper and that the Jamesway I Plan was substantially consummated when Jamesway II was filed. We agree with Jamesway that the result reached in *Jartran* is the correct one and that its ruling is not at all inconsistent with the court's decision in *Klein Sleep*. We also agree that Landlords misplace their reliance on *White Farm*. In that case, subsequent to its decision in *Jartran*, the court of appeals held that a seventh priority trust fund tax claim asserted by the internal revenue service in the debtor's first chapter 11 case retained that priority in a second case filed against the same debtor approximately four years after confirmation of a plan of reorganization in the first case. In attempting to interpret §§ 507, 523 and 1141 "so as to ensure that the delicate balance of the priority and discharge schemes established by the Code is not skewed by the unanticipated development of serial Chapter 11 filings", 943 F.2d at 757, the court emphasized that unlike other kinds of tax claims which are given priority under § 507(a)(7) for only a limited time, trust fund tax claims are granted priority under § 507(a)(7)(C) "regardless of their age." *Id.* at 754. However, in distinguishing

its previous decision in *Jartran* and refusing to extend its holding in that case "so far beyond its unique facts", the court stated that "administrative claims are intimately tied to a single bankruptcy case in a manner that is completely different from the trust fund tax claims at issue here." *Id.* at 757. *White Farm* is inapposite because the payment of trust fund taxes is not at issue in this case. This case is on all fours with *Jartran.*

■ Landlords assert that by application of principles of *res judicata*, Jamesway cannot deny that it assumed the Leases. Jamesway does not dispute that the Leases were assumed in Jamesway I. However, they were not assumed in Jamesway II. Assumption of the Leases in Jamesway I has no *res judicata* effect in Jamesway II because, as noted above, Jamesway I and Jamesway II are distinct cases involving different debtors. *See Liona Corp., Inc. v. PCH Assocs. (In re PCH Assocs.,)*, 949 F.2d 585, 594 (2d Cir.1991) ("[r]es judicata, or claim preclusion, precludes a litigant from advancing in a new action all claims or defenses that were or could have been raised in a prior proceeding in which the same parties or their privies were involved and that resulted in a judgment on the merits").

LPR cites *Klein Sleep* for the proposition that without the security of an administrative priority, landlords in general would be assuming a disproportionate share of the risk associated with a reorganization. By contrast, the Committee contends that a rule granting creditors administrative priority for claims arising out of rejected leases which were assumed in prior bankruptcies would contravene the policy favoring rehabilitation of the debtor. It argues that giving claims such as those asserted by the Landlords administrative priority in subsequent cases would create a potential administrative liability for the unexpired duration of a lease, and that this potential liability would create an excessive credit risk that post-reorganization trade creditors would be unwilling to take. In addition, the Committee argues, no plan could ever be confirmed because reserves of funds would have to be set aside for these claims and there would be little or nothing left for unsecured creditors. According to

the Committee, it would also be very difficult for a debtor to establish feasibility under § 1129(a)(11), the likelihood that additional financial reorganization would be necessary being much greater.

LPR's undue prejudice argument withstands scrutiny when a single bankruptcy case is involved. There it is both reasonable and equitable to confer greater priority upon a claim for future rent reserved under an assumed lease than the claims asserted by the estate's general pre-petition unsecured creditors. When applied to successive chapter 11 cases, however, this argument fails. The second case gives rise to new administrative and unsecured claimants who would be unduly prejudiced if Landlords asserted administrative status based upon the assumption of their Leases in the prior proceeding.

Underlying Landlords' arguments is their contention that permitting Jamesway to engage in serial filings circumvents remedies provided in the Bankruptcy Code for failed reorganizations and its proscription under § 1127 of modifications to the terms of a plan that has been substantially consummated. In limited instances, courts dismiss serial bankruptcy filings on bad faith or similar grounds. *See, e.g., In re Delaware Valley Broadcasters Ltd.*, 166 B.R. 36, 40–41 (Bankr.D.Del.1994) (dismissing second chapter 11 filing while first case still pending where plan had not been substantially consummated in first case, second case dealt with same claims addressed under first plan, no changed circumstances warranted second filing and court, while not ruling on issue of bad faith, noted that bad faith may be inferred if debtor can anticipate changed circumstances prior to confirmation of first plan); *In re AT of Maine, Inc.*, 56 B.R. 55, 58 (Bankr.D.Me.1985) (dismissing second chapter 11 case filed prior to closure of earlier case where first plan of reorganization was substantially consummated, new petition would in essence affect or modify substantially consummated plan and second petition was not filed in good faith since debtor held property only as trustee for benefit of sole beneficiary, debtor had no assets, business or employees and sole justification for filing sec-

ond case was to protect trust beneficiary by preventing trust's creditors from proceeding against res to collect claims arising from default under first plan). Absent conduct amounting to bad faith, serial chapter 11 filings are generally allowed. *See, e.g., Jartran,* 886 F.2d at 869 ("[t]he Code clearly by its terms permits serial good faith Chapter 11 filings, even where the effect is to circumvent protections generally afforded creditors under the Code's provisions for failed reorganizations"); *Elmwood Development Co. v. General Electric Pension Trust (In re Elmwood Development Co.),* 964 F.2d 508, 511 (5th Cir.) ("the national consensus permit[s] serial filings in Chapter 11 cases provided the second petition was filed in good faith") (citing cases), *reh'g denied,* 974 F.2d 1337 (5th Cir.1992); *United States v. Conston, Inc. (In re Conston, Inc.),* 181 B.R. 769, 772 n. 4 (D.Del.1995) ("although Congress did not expressly enumerate serial Chapter 11 filings as a viable [plan] post-default option, the courts have generally permitted them") (citing cases).

Jamesway denies that these are bad faith serial filings. Moreover, as noted, for purposes of these motions, Landlords stipulated that Jamesway II was not filed in bad faith and they do not contend that serial chapter 11 cases are *per se* improper. Landlords may be free to challenge the propriety of Jamesway's commencement of Jamesway II or to seek relief in Jamesway I. To date neither Landlords nor any other interested party has done so. However, Landlords' claims are not entitled to administrative expense priority in this case. Our court of appeals has emphasized that "priorities in bankruptcy should be narrowly construed and sparingly granted." *Klein Sleep,* 78 F.3d at 23 (citing *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d at 100). Under the facts of this case, damages arising from the rejection of unassumed Leases do not give rise to an administrative priority claim. We hold on these facts that Jamesway is entitled to judgment as a matter of law declaring that Landlords' claims arising from rejection of the Leases in Jamesway II are unsecured pre-petition claims against the Jamesway II estate. *See* 11 U.S.C. § 365(g)(2) (providing that unas-

sumed leases that are rejected are deemed to have been breached immediately prior to the petition date). It follows from this finding on these facts that their claims are subject to the limitation set forth in § 502(b)(6) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b)(6).

In support of its cross-motion, Jamesway also argued that Landlords are barred from taking certain legal positions by operation of the doctrines of judicial estoppel and laches. In light of the foregoing, we need not address those arguments.

### Conclusion

For all of the reasons state herein, Landlords' motion for summary judgment is denied and Jamesway's cross-motion for summary judgment is granted.

SETTLE JUDGMENT AND ORDER.