**In re JAMESWAY CORPORATION, Debtor.**

**Bankruptcy No. 95 44821 (JLG).**

United States Bankruptcy Court, S.D. New York.

Dec. 11, 1996.

Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York City, for Debtor.

Dollinger & Dollinger, P.A., Hauppauge, NY, for Station Road Properties, LLC, successor to Mack Properties Co. No. 12.

## MEMORANDUM DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Station Road Properties, LLC, as successor to Mack Properties, Co. ("Mack"), seeks summary judgment allowing its lease rejection damage claim as an administrative priority expense in these cases (collectively, "Jamesway II") based on an order (defined below as the "Assumption Order") entered in different chapter 11 cases (collectively, "Jamesway I"), or pursuant to §§ 503(b)(1) and 507(a)(1) of title 11, United States Code (the "Bankruptcy Code"). Jamesway Corporation ("Jamesway") opposes that motion and cross-moves for summary judgment denying Mack's administrative priority claim. Alternatively, it seeks entry of an order under Fed.R.Civ.P. 60(b)(6) deleting so much of the Assumption Order that grants Mack's lease rejection claim administrative priority status in this case. We deny Mack's motion and grant Jamesway's cross-motion for summary judgment. We deny, as moot, Jamesway's request for Rule 60(b) relief.

### Facts

On July 19, 1993, Jamesway and its affiliates commenced Jamesway I by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this district. At that time, Jamesway occupied a distribution center with Mack pursuant to a 21 year lease dated September 12, 1982 (the "Lease"). Post-petition, Jamesway agreed to assume the Lease in exchange for Mack's agreement to modify certain terms and conditions of the Lease. Accordingly, on September 30, 1994, Mack and Jamesway executed a lease modification agreement (the "Lease Modification Agreement"). It states that in consideration for, among other things, Mack's reducing the annual rent under the Lease by $67,000 and shortening the Lease term by two years, *see* Lease Modification Agreement ¶¶ 2, 3, 4, Jamesway agreed, among other things, to "give [Mack] an administrative priority claim under Section 503(b) and Section 507(a)(1) of the Bankruptcy Code for all damages resulting from any future breach or rejection of the assumed Lease, as modified...." *Id.* ¶ 9(a)(1).

On or about December 1, 1994, Jamesway moved for an order authorizing it to assume the Lease, as modified by the Lease Modification Agreement. Jamesway served the motion on Mack, the Jamesway I Creditors' Committee, the U.S. Trustee and the one hundred and twenty-two (122) parties who filed notices of appearance in Jamesway I.

By order dated December 12, 1994, we confirmed Jamesway's joint plan of reorganization in Jamesway I ("Jamesway I Plan"). On December 14, 1994, we signed an order (the "Assumption Order") approving and authorizing Jamesway to assume the Lease, as modified. In relevant part, the order reads as follows:

> ORDERED that pursuant to § 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006, Jamesway's assumption of the Modified Lease be, and it hereby is, approved in all respects; and it is further ORDERED that Mack shall have an administrative priority claim under §§ 503(b) and 507(a)(1) of the Bankruptcy Code for all damages resulting from any future breach or rejection of the Modified Lease....

Assumption Order, pp. 1–2. The Jamesway I Plan became effective on January 28, 1995 and is substantially consummated within the meaning of § 1101 of the Bankruptcy Code. Jamesway I remains an open case in this court.

On October 18, 1995, reorganized Jamesway and its affiliates commenced Jamesway II by filing separate chapter 11 petitions in this district. Jamesway did not assume the Lease in Jamesway II and post-petition, we authorized Jamesway to reject the Lease pursuant to § 365 of the Bankruptcy Code. On May 15, 1996, Mack filed an administrative priority claim in this case totalling $25,000,367.00 on account of its alleged Lease rejection damages.

### Discussion

We have subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (B) and (O).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Knight v. United States Fire Insur. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). There is no dispute regarding the facts material to a determination of the priority of Mack's claim in this case. The motions are ripe for resolution.

■ Mack first argues that the Assumption Order is ambiguous because in stating that Mack shall have an administrative priority claim for damages resulting from "any future breach or rejection of the [Lease]" the order could refer to a breach of the Lease in a bankruptcy case other than Jamesway I. It maintains that, based on extrinsic evidence, we should conclude that the parties intended to grant Mack an administrative priority claim in any case in which the Lease is rejected and so enforce it in this case. Among other things, Mack notes that we executed the Assumption Order two days after the Jamesway I Plan confirmed, when it was unlikely that the Lease would be rejected, and that Mack's promise to reduce the rent and term of the Lease was expressly conditioned upon its receiving an administrative priority for any future breach of the lease. The debtor argues that the Assumption Order is unambiguous and applies only in Jamesway I. It contends that any other construction of that order will render it unconstitutional as violating the due process rights of the Jamesway II debtor in possession and the Jamesway II creditors. Debtor argues that if we find the order to be ambiguous, Mack nonetheless must prove that its claim is entitled to administrative priority status and that it has not done so. Finally, debtor contends that if we construe the Assumption Order as Mack requests, it is entitled to relief under Fed.R.Civ.P. 60(b)(6) deleting so much of the order that grants Mack an administrative priority claim in any future case in which the Lease is rejected.

■ General rules of contract construction apply in construing orders and judg-

ments. *See Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 575 (2d Cir.1983). The Assumption Order embodies salient provisions of the Lease Modification Agreement. Mack and Jamesway submitted that order to effectuate the Lease Modification Agreement and we treat it as a consent judgment or decree. *See id.* at 579 ("A consent judgment or decree is 'an agreement of the parties entered upon the record with the sanction and approval of the [c]ourt.' ") (citations omitted); *SEC v. Levine*, 881 F.2d 1165, 1178 (2d Cir.1989) ("A consent judgment, though it is a judicial decree, is principally an agreement between the parties."). We must interpret it as we would a contract, to give effect to what the parties agreed to, as reflected in the judgment itself or documents incorporated therein by reference. *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d at 575; *SEC v. Levine*, 881 F.2d at 1178. Because a consent decree embodies compromises among parties who waive their rights to litigate and thereby save time and expense while avoiding the risk of adverse judgments

> the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant parties have the bargaining power and skill to achieve. *For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.* Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, *and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation. . . .*

*SEC v. Levine*, 881 F.2d at 1178–79 (citations omitted) (emphasis added). *See also Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.1985) (in construing a consent decree a court is "not entitled to expand or contract the agreement of the parties as set forth in the consent decree").

■ We determine whether the terms of an order are ambiguous as a matter of law. *See, e.g., Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993). In making that determination, we do not focus on

> an isolated part [of the order], but [on] all parts of the [order] itself. Hence, in construing an [order], it should be examined and considered in its entirely. Such construction should be given to [an order] as will give force and effect to every word of it . . . and make it as a whole consistent and reasonable. In applying this rule, effect must be given to that which is unavoidably and necessarily implied in [an order], as well as to that which is expressed in the most appropriate language.

*In re Doty*, 129 B.R. 571, 588 (Bankr. N.D.Ind.1991). *See also Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 300 (2d Cir.1996) (rule is that "where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity."); *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d Cir.1994) (reading clauses in contract in isolation violates "well-established principles of contract construction, which require that all provisions of a contract be read together as a harmonious whole, if possible.").

■ Mack may have desired to obtain an administrative expense priority lease rejection claim in any future bankruptcy case in which the Lease is rejected, but the Assumption Order does not so provide. That order unambiguously gives Mack an administrative priority lease rejection damage claim in Jamesway I if that debtor rejects the Lease. Because *Klein Sleep* (as defined and discussed below) had not been decided by the Second Circuit when we entered the Assumption Order, it was then not clear that Mack was entitled to that relief. The Assumption Order is of record in Jamesway I and speaks only of that case. It is silent regarding future bankruptcy cases. Because the order is unambiguous, Mack cannot admit extrinsic evidence as to its meaning. *See Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d at 575 ("Under New York contract law, a court

may only consider extrinsic evidence in contract interpretation if the intent of the parties cannot be ascertained from the document itself because language contained therein is ambiguous."). We reject Mack's construction of the Assumption Order and find that it does not accord Mack an administrative priority claim in this case. We need not discuss debtor's due process arguments or consider its Fed.R.Civ.P. 60(b)(6) motion.

 Mack next argues that the doctrines of res judicata and finality mandate that we accord its lease rejection claim administrative priority based on our approval of the Assumption Order. Res judicata dictates that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Kuzminski v. Peterman (In re Peterman )*, 5 B.R. 687, 689 (Bankr.E.D.Penn.1980) (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). The doctrine of finality is related to res judicata. Neither is applicable because they do not apply to questions of construction. *See St. Louis, Kansas City, & Colorado Railroad Co. v. Wabash Railroad Co.*, 217 U.S. 247, 250, 30 S.Ct. 510, 512, 54 L.Ed. 752 (1910) ("the mere construction of a decree involves no challenge to its validity") (citing *Smithsonian Institution v. St. John*, 214 U.S. 19, 29 S.Ct. 601, 53 L.Ed. 892 (1909)); *see also* 46 Am.Jur.2d § 72, at 363 ("the general rule precluding a collateral attack upon a judgment does not prevent the interpretation of a judgment which is incomplete or ambiguous on its face, or an explanation of the judgment by parol evidence").

 Finally, Mack argues that its claim is entitled to administrative priority under §§ 365(g) and 507(a)(1) of the Bankruptcy Code based upon the Second Circuit's recent decision in *Nostas Associates v. Costich (In re Klein Sleep Products, Inc.)*, 78 F.3d 18 (2d Cir.1996) ("*Klein Sleep* "). Debtor disputes that contention. The *Klein Sleep* debtor was party to a pre-petition non-residential real property lease with Nostas Associates ("Nostas"). Approximately 2½ years

after debtor assumed Nostas' lease, the court appointed a chapter 11 trustee to liquidate debtor's assets. The trustee rejected that lease and surrendered the premises. *Id.* at 21. Nostas relet the premises and asserted an administrative priority claim calculated in part as the difference between the future rent reserved under the lease and the total rent under the new lease. *Id.* The bankruptcy court rejected Nostas' administrative priority claim but allowed the claim for future rent as a general unsecured claim subject to § 502(b)(6) of the Bankruptcy Code. The district court affirmed, finding that the future rent claim was not entitled to administrative expense status because the post-surrender damages incurred by Nostas conferred no benefit upon the debtor's estate as required by § 503(B)(1)(A) of the Bankruptcy Code. *Id.* at 22. The Second Circuit reversed, holding that claims for future rent under assumed leases are administrative priority expenses regardless of whether the leases subsequently are rejected. *Id.* at 28. The court based its ruling upon its conclusion that Klein Sleep benefitted from assuming the lease, and its analysis of §§ 365(g) and 502(g) of the Bankruptcy Code and practice under the former Bankruptcy Act. *Id.* at 22–30.

In *In re Jamesway*, 202 B.R. 697 (Bankr. S.D.N.Y.1996), a group of landlords whose leases with Jamesway were assumed in Jamesway I and rejected, without first being assumed, in Jamesway II, made the same argument advanced by Mack in support of their request that their lease rejection claims be accorded administrative priority status in Jamesway II. *Id.* at 698–99. They contended that for purposes of § 365(g)(2), which states that "the rejection of an ... unexpired lease of the debtor constitutes a breach of such ... lease (2) if such ... lease has been assumed ...", the term "debtor" refers to any debtor under the Bankruptcy Code, regardless of whether the "debtor" rejecting the lease is the "debtor" that assumed it. *Id.* at 700–01. They also argued that because § 502(g) is silent regarding the treatment of claims arising from the rejection of assumed leases, it is reasonable to treat them as § 503(b)(1) administrative expenses, even in subsequent proceedings. *Id.* at 700–01. We

rejected Landlord's arguments, distinguishing *Klein Sleep* because it involved the assumption and rejection of a lease in the same chapter 11 case, whereas Jamesway I and Jamesway II are different chapter 11 cases involving different debtors. *Id.* at 700. We found that the term "debtor" in § 365(g)(2) refers to the debtor that previously assumed and then rejected a lease, and not to a debtor in a different case because "[t]he estate created in one bankruptcy case is distinct from that created upon the commencement of a subsequent case." *Id.* at 701. Additionally, we found that because the Jamesway II estate derived no benefit from the leases, the landlords' were not entitled to an administrative priority expense claim in Jamesway II. *Id.* at 701–02 (citing *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 870 (7th Cir.1989)). Finally, we rejected the landlords' argument that their construction of § 365(g) is consistent with practice under the Bankruptcy Act which granted administrative priority to executory contracts assumed during a reorganization that are later rejected, was similarly unpersuasive because practice under the Bankruptcy Act did not contemplate serial chapter 11 cases. *Id.* at 703. Mack is in precisely the same position as those landlords and our conclusions summarized above are equally applicable here. Indeed when this matter was submitted, *Jamesway* was *sub judice* and Mack agreed to be bound by that decision. An additional reason for rejecting Mack's argument is that it has not shown why it's lease rejection damage claim is entitled to better treatment than the claims of Jamesway II's general unsecured creditors. With respect to that claim, Mack is in precisely the same position as to Jamesway II as those creditors.

### Conclusion

We deny Mack's motion for summary judgment and grant Jamesway's cross-motion for summary judgment denying Mack's motion and disallowing Mack's administrative claim. We deny, as moot, Jamesway's Fed. R.Civ.P. 60(b)(6) motion.

SETTLE JUDGMENT AND ORDER.